# In re INDEPENDENT AUTOMOBILE FORWARDING CORPORATION.

## No. 27444.

District Court, W. D. New York.

July 5, 1940.

Reversed, in part 118 F.2d 537.

George L. Grobe, U. S. Atty., and Joseph J. Doran, Asst. U. S. Atty., both of Buffalo, N. Y., for the government.

John J. Bennett, Jr., Atty. Gen., State of New York (Vincent A. Tauriello, of Buffalo, N. Y., W. Gerard Ryan, of Albany, N. Y., and Francis R. Curran, of Poughkeepsie, N. Y., of counsel), for the State of New York.

KNIGHT, District Judge.

The issue here presented is the manner of distribution of the sum of $3,053.20 re-

maining in the bankrupt estate. Priority claims of the United States and the State of New York for taxes will absorb the entire amount. Claims in favor of the former have been allowed as follows:

Social security taxes under Section IX .................... $3,400.49
Other federal taxes............ 3,189.19

Claims of the State were allowed as follows:

Unemployment insurance ....... $3,305.82
Other state taxes ............. 2,720.80

■ Under Section 902 of the Social Security Act, 42 U.S.C.A. § 1102, in cases where the assets are insufficient to pay the state unemployment and federal social security taxes in full, it will be seen that the amount payable to the state can not be determined until the credit allowable on the federal tax is known and the said credit can not be determined until the amount payable to the state is settled. In view of the variation of these two factors in relation to each other, the United States submits the standard algebraic formula for solving quadratic equations as a method of determining the distribution percentage. Using the symbol A for the amount of the state's claim for unemployment insurance, i. e., $3,305.82; the symbol B for the total of all other taxes, i. e., $9,310.48; the symbol T for the total assets to be distributed, i. e., $3,053.20; and the symbol X for the percentage of distribution to be determined, it is found that the equation X [(A&B)— AX] = T reduces to $AX^2 - (A\&B)X + T = 0$.

Using the quadratic formula

$$X = \frac{-b \pm \sqrt{b^2 - 4\,ac}}{2a}$$ and substituting

symbols from the equation previously stated, the equation becomes

$$X = \frac{(A+B) - \sqrt{(A+B)^2 - 4\,A\,T}}{2A}$$

Upon substituting the known numerical equivalents in the equation and resolving it, the distribution percentage is found to be 25.967 per cent. $858.42 will therefore be available on the state unemployment insurance claim and that amount will be credited against the social security tax claim reducing the latter to $2,542.07. The amounts payable on all claims will then be computed as follows:

Social security taxes........... $ 660.10
Other federal taxes............. 828.14
Unemployment insurance taxes... 858.42
Other state taxes.............. 706.53
_____
$3,053.19

The state asserts that this method of computation is unsatisfactory for the reason that it is not applicable to cases wherein the assets are more than sufficient to pay the tax claims in full. It is difficult for the court to believe that in such a case an issue would arise which would require the use of a formula for determining the distribution, and it seems sufficient to observe that the suggested formula is designed for cases such as that in hand, wherein the assets are insufficient to pay all tax claims in full.

The state further contends that the 90 per cent. credit allowed by Section 902 is not to be taken against the amount of federal tax levied, but against the amount paid to the federal government. The state submits an arithmetic computation whereby an initial distribution is set up based upon the ratio of each claim to the total amount of all claims. As against the amount set up for payment of social security taxes, credit of 90 per cent. is deducted and the amount of such credit distributed as in the first instance. This process is repeated until the credit available reaches the vanishing point. Under this computation the distribution would be as follows:

Social security ................ $ 108.67
Other federal taxes............ 1,018.99
Unemployment insurance........ 1,056.09
Other state taxes.............. 869.45
_____
$3,053.20

The difference between the amounts payable to the state under its own computation and that of the United States is comparatively small, but it is urged that numerous other cases will involve the same question and that a rule should now be established upon which future computation may be made.

■ Section 902 of the Social Security Act, as amended, 42 U.S.C.A. § 1102 note, is clear and unambiguous. It must be assumed to correctly state the intent of the legislature and is not to be construed in derogation of its clear meaning. It is provided that "against the tax

imposed by section 901 [1101 of Title 42] * * * any taxpayer shall be allowed credit for the amount of contributions * * * paid by him into an unemployment fund under a State law * * *." However, the "total credit allowed against the tax imposed shall not exceed 90 percentum of such tax." Under the statute it is only when the payments into a state unemployment fund exceed 90 per cent. of the federal tax that any question of limitation of credit arises. The federal computation recognizes this rule by giving full credit for the proposed distribution on unemployment insurance. The state would apply the 90 per cent. credit against the amount paid to the federal government. The error in such computation is that the state would apply the credit against payments on the tax rather than against the tax itself. While it may seem inequitable to require a larger payment than would be required if the estate were larger, the statute brings about such a result. The intent of the legislature was to compel prompt and full payment of unemployment insurance payments. If this be inequitable the change must come through amendment of the statute, not by judicial interpretation contrary to the clear meaning of the legislation.

■ Some question has been raised as to whether contributions under the State Unemployment Act are "taxes." The parties seem now agreed that they are. Some confusion is created by the language of Section 522, sub. 6 of the Labor Law, Consol.Laws N.Y. c. 31 (State Unemployment Fund), and there are certain decisions holding that such contributions are not "taxes": In re Fidelity Fuel Co., D.C., E.D.Pa. 1940, 35 F.Supp. 919; In re Mosby Coal & Mining Co., D.C., 24 F.Supp. 1022; In re William Akers, Jr., Co., D.C., 31 F. Supp. 900; State of Missouri v. Earhart, 8 Cir., 111 F.2d 992. Certain of these construed state statutes differing in language from the New York act. This, however, will make no difference in our view of the application of these cases. The contributions come within the meaning of the word "taxes" as that word has many times been construed. "A 'tax' is defined to be 'a contribution imposed by government on individuals, for the service of the state.'" Morgan's L. & T. R. & S. S. Co. v. Louisiana State Board of Health, 118 U.S. 455, 6 S.Ct. 1114, 1117, 30 L.Ed. 237. "The character of a tax is well known. It is a charge or burden laid upon persons or property for public purposes; a forced contribution authoritatively imposed." Tevander v. Ruysdael, 7 Cir., 299 F. 746, 753. In re Standard Composition Co., D.C., 23 F. Supp. 391; Matter of Otto F. Lange Co., D.C., 159 F. 586. Numerous authorities have held that these contributions are in the nature of a tax. Chamberlin, Inc., v. Andrews, 271 N.Y. 1, 2 N.E.2d 22, 106 A. L.R. 1519, affirmed 299 U.S. 515, 57 S.Ct. 122, 81 L.Ed. 380; Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327; In re Sixty-Seven Wall St. Restaurant Co., D.C., 23 F.Supp. 672; In re Oshkosh Foundry Co., D.C., 28 F.Supp. 412; In re Mytinger, D.C., 31 F.Supp. 977. The question of whether this state statute imposes a tax is a federal question. New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284; In re Mid America Co., D.C., 31 F.Supp. 601; and other cases last above cited. Peculiarly is this so under the Social Security Act, 42 U.S.C.A. § 301 et seq.

■ In a supplemental brief, counsel for the State for the first time urged that the claim of the United States for taxes under Title VIII of the Social Security Act, 42 U.S.C.A. § 1001 et seq., as representing the tax on employees is not entitled to priority under Section 64 of the Bankruptcy Act, 11 U.S.C.A. § 104. This relates to one-half of the tax imposed under Section 801 of Title VIII. This contention can not be sustained. The tax is imposed on the employer. Section 802(a) reads: "Every employer * * * hereby made liable for the payment of such tax." Gulf Oil Corporation v. Grady (In re Conklin), 2 Cir., 110 F.2d 178, 42 A.B.R.,N.S., 142 (2d C.), cited by the state, is not in point. That case construed the New York tax law, Article 12-A, Section 282 et seq., Consol. Laws N.Y. c. 60, which "makes the distributor, not the purchaser, the taxpayer, * * *."

The balance of the moneys in the hands of the trustee is directed to be distributed as follows:

| | |
|---|---|
| State's claim of $3,305.82 for unemployment compensation contributions | $ 858.42 |
| Federal claim for Title IX taxes giving effect to credit | 660.10 |
| All other state taxes | 706.53 |
| All other federal tax claims | 828.14 |
| Total | $3,053.19 |