Argued September 5; reversed October 16, 1945

# STATE INDUSTRIAL ACCIDENT COMMISSION
## *v.* AEBI

(162 P. (2d) 513)

*Ray H. Lafky,* of Salem, for appellant.

Submitted on brief by Otto W. Heider, of Sheridan, for respondent.

KELLY, J.

The question here presented is whether a discharge in bankruptcy has the effect of discharging a judgment theretofore rendered against an employer there-

after adjudicated a bankrupt in favor of the State Industrial Accident Commission for unpaid, overdue exactions required by the Workmen's Compensation Act to be paid by employers engaged in occupations declared to be hazardous, unless notice in writing be given to said commission that such employers elect not to contribute to the Industrial Accident Fund. Sections 102-1712, 102-1713 and 102-1721, Vol. 7, O. C. L. A., pp. 630, 633, and section 102-1742, ibid, p. 660.

The complaint herein filed on August 1, 1941, supplies the following pertinent facts:

"That from May 1, 1940, to December 31, 1940, the defendant engaged within the State of Oregon in the occupations of logging and operation of sawmill, and that while so engaged said defendant employed in said occupations various workmen.

"That said occupations of logging and operation of sawmill are hazardous occupations, as defined by Title 102-Chapter 17, O. C. L. A., as amended, which is hereinafter referred to as the Workmen's Compensation Act.

"That at no time during the period herein mentioned or at any time prior thereto has the defendant filed with the plaintiff a statement in writing declaring his election not to contribute to the Industrial Accident Fund, and that at all times herein mentioned said defendant has been subject to the Workmen's Compensation Act.

"That the payrolls of the defendant covering said period from May 1, 1940, to December 31, 1940, have been audited by duly authorized agents of the plaintiff, and that said audits show and plaintiff alleges as a fact that the defendant while engaged in the aforesaid occupations, and during said period, paid or obligated himself to pay to said workmen as wages the sum of $13,241.23, and that the days or parts of days all of said workmen were individ-

ually employed as aforesaid, during said period, amount to 4173 days of work.

"That as provided by law the defendant thereby became indebted to the plaintiff in the sum of $974.53 and that the defendant paid to the plaintiff the sum of $185.04, leaving a balance of $789.49 due and owing by the defendant to the plaintiff.

"That on May 21, 1941, the plaintiff made formal demand in writing for the sum due and owing by the defendant to the plaintiff, as hereinbefore alleged, which sum the defendant has refused and now refuses to pay.

"That as provided in Section 102-1742, O.C.L.A., of said Workmen's Compensation Act, the defendant is further indebted to the plaintiff in the sum of $91.61 as interest no part of which has been paid except $14.96, leaving a balance of $76.65 and $78.94 as penalty, which sums are now due and owing by the defendant to the plaintiff."

On May 6, 1942, a default judgment was rendered against defendant in favor of plaintiff in the sum of $945.08 and interest on $789.49 at the rate of 1% per month from September 1, 1941, until paid, together with costs and disbursements taxed at $15.70.

On April 4, 1942, on a petition in bankruptcy filed by defendant in the United States District Court for the District of Oregon, defendant was duly adjudicated a bankrupt.

On June 1, 1942, in said bankruptcy proceedings an order of discharge was duly made by the referee in bankruptcy, which, omitting the title and signature, is as follows:

"At Hillsboro, in said District, on the 1st day of June, 1942.

"It appearing that John Aebi of Oceanlake in the County of Lincoln, State of Oregon, was duly

adjudicated a bankrupt on a petition filed by him on the 4th day of April, 1942; and

"It further appearing that after due notice by mail no objections to the discharge of said bankrupt was filed within the time fixed by the Court.

"It is Ordered that the said John Aebi be and he hereby is discharged from all debts and claims which are made provable by said Act against his estate, except such debts as are by said Act excepted from the operation of a discharge in bankruptcy.

"Dated this 1st day of June, 1942."

On January 25, 1945, the trial court made the order from which this appeal is taken discharging and satisfying of record said default judgment of May 6, 1942.

For the purposes of this case the following provisions of section 17 of the bankruptcy act are pertinent, to-wit:

" A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as (first) are due as a tax levied by the * * * State, * * * or (fourth) were created by his * * * misappropriation, or defalcation while acting * * * in any fiduciary capacity; * * *." U. S. C. A., Title 11, Bankruptcy § 17.

Plaintiff contends that the judgment in suit, being based upon exactions or contributions prescribed by the Workmen's Compensation Act, was not and is not dischargeable in bankruptcy, because as to the contributions required of defendant as an employer, and interest thereon, said judgment is based upon a tax and penalty for nonpayment thereof; and as to the amount retained by defendant from moneys earned by his workmen (section 102-1737, Vol. 7, O. C. L. A., p 656) and not paid to the plaintiff commission, said judgment is based upon a debt created by defendant's mis-

appropriation and defalcation while acting in a fiduciary capacity. In support of plaintiff's position, as above stated, cases are cited holding that contributions required of employers by unemployment compensation acts are not dischargeable in bankruptcy because such exactions are deemed to be taxes. *Carmichael v. Southern Coal & Coke Co.* 301 U. S. 495, 57 S. Ct. 868, 81 L. Ed. 1245, 109 A. L. R. 1327; *Ernst v. Hingeley,* 11 Wash. (2d) 171, 118 P. (2d) 795; *In re Independent Automobile Forwarding Corporation,* 35 F. Supp. 919; *In re Wm. Akers Jr. Co.* (3 cases) 121 F. (2d) 846, 135 A. L. R. 1503.

Defendant argues that there are such fundamental differences between the Unemployment Compensation Law and the Workmen's Compensation Law that the cases above cited are not in point. These differences are treated in three paragraphs of defendant's brief to which we are restricted in our effort to consider defendant's contention in that regard because his attorney did not favor us with an oral argument.

First. Defendant asserts that the purpose of Unemployment Compensation legislation is to provide social security for the benefit of our economic system by relieving the economic strain of unemployment. Defendant says that the purpose of Workmen's Compensation legislation is to provide a compulsory system of insurance for the protection of injured persons.

Second. Defendant argues that because of the broad purpose of Unemployment Compensation legislation, i. e., for the general public welfare, the contribution required under such legislation can be regarded as a tax for the purpose of promoting the general public welfare. Under Workmen's Compensation legislation, the injury for which compensation is given arises out

of the employment and is caused by the employment, whereas unemployment cannot be said to arise out of employment or be caused thereby, but is the result of economic forces over which the individual employer has little or no control. The function of the state under Workmen's Compensation legislation is a combination of an insurance company and a police force to see that the employer's insurance program is carried out.

Third. Defendant states that, as a *quid. pro quo,* under the Workmen's Compensation Law the employer is relieved of common law liability for an unlimited amount. On the other hand, under the Unemployment Compensation Law the employer receives nothing for his contributions, i. e. He receives no more than does any other citizen who benefits as a result of fuller employment. This distinction, says defendant, again points to the fact that under the Workmen's Compensation Law the employer is paying for insurance which directly benefits him whereas under Unemployment Compensation Law the employer is simply contributing to a fund, which is to be expended for the general welfare.

As to defendant's first and second purported distinctions between the Unemployment Compensation Act and the Workmen's Compensation Act, we think that the preamble of the latter stating the conditions requiring the enactment of a workmen's compensation law assigns a much broader basis for such legislation than merely to provide a compulsory system of insurance for the protection of injured persons.

We quote that preamble:

"§ 102-1701. Preamble as to conditions requiring workmen's compensation law. The state of Ore-

gon recognizes that the prosecution of the various industrial enterprises which must be relied upon to create and preserve the wealth and prosperity of the state involves the injury of large numbers of workmen, resulting in their partial or total incapacity or death, and that under the rules of the common law and the provisions of the statutes now in force an unequal burden is cast upon its citizens, and that in determining the responsibility of the employer on account of injuries sustained by his workmen, a great and unnecessary cost is now incurred in litigation which cost is divided between the workmen, the employers and the taxpayers, who provide the public funds, without any corresponding benefit, to maintain courts and juries to determine the question of responsibility under the law as it now exists, and that the state and its taxpayers are subjected to a heavy burden in providing care and support for such injured workmen and their dependents, and that this burden should, in so far as may be consistent with the rights and obligations of the people of the state, be more fairly distributed as in this act provided. Vol. 7, O.C.L.A., 618.

■ We are of the opinion that the broad purpose as expressed in the preamble above quoted, discloses that, like its companion in social legislation, the Unemployment Compensation Act, the Workmen's Compensation Act is for the general public welfare. We think that the application of each of these social welfare acts arises out of, and is based upon, the relation of master and servant which certainly is a relation or status of employment. In the one case, the beneficial application to the employee is made when physical injury occurs to him; in the other when his services are interrupted by economic conditions; but at all times the benefit of the general public attends because the burden

of these circumstances, always borne in part by the public, is lightened by such legislation.

As to the third contention made by defendant, we think that we are not called upon to measure the relative amount of benefit to the public, which accrues by reason of the operation of the Workmen's Compensation Act as compared with that which is the result of the Unemployment Compensation Act. It suffices for the purpose of this discussion that the general public is benefited by both of these acts.

We are not unmindful that defendant also urges that the Workmen's Compensation Act is elective on the part of the employer, while the Unemployment Compensation Act is compulsory.

This is not an exact statement of the provisions of the Workmen's Compensation Act. It is true that the employer may avoid paying contributions to the fund by serving notice to that effect; but, if he does serve such notice, he is bound by the provisions of the act, which deprive him of the common law defenses in any suit or action based upon personal injury to his workmen arising out of and in the course of their employment.

Analyzing the Workmen's Compensation Act, the one who engages in a hazardous occupation may avoid coming under that act merely by conducting his operations by and through independent contractors.

■ Moreover, it does not destroy the character of a tax on exaction imposed by statute merely because it applied only to a certain class.

In discussing the case *In re Oshkosh Foundry Co.,* 28 F. Supp. 412, defendant argues that the compulsory nature of the contribution under the Wisconsin Unemployment Compensation Act and that it was made

to conform with the Federal Social Security Act were deemed by the Wisconsin Federal Court to be controlling. We think that it is not correct to assume that in the Workmen's Compensation Act there is no factor of compulsion upon an employer engaged in a hazardous operation. It is true, that, if such an employer prefers to deal with the results of injuries to his workmen without the interposition of any state protective agency and in doing so be deprived of his right to defend on the ground of assumption of the risk, contributory negligence or negligence of a fellow servant, any personal injury action instituted by any of his workmen rather than be subject to the payment of the contributions prescribed in the act, the employer has the right thus to classify himself. As to the employers affected by the act, who do not prefer thus to be deprived of this state protection and of these common law defenses, but do prefer to have the benefit of the state's interposition, they constitute a class or group upon which there is an enforced contribution for the payment of public expenses. Certainly, as to the members of this group of which defendant was a member, the contributions were compulsory. In no sense could these "contributions", required of this class of employers, be said to be mere gratuities.

As applied to contributions required of employers under the Wisconsin Unemployment Act, the federal district court quoted approvingly the definition of the term "tax" given by former Chief Justice Hughes of the United States Supreme Court while sitting as associate justice, which definition is as follows:

"A tax is an enforced contribution for the payment of public expenses. It is laid by some rule of apportionment according to which the persons

or property taxed share the public burden, *and whether taxation operates upon all* within the state, or upon those of a given *class or locality, its essential nature is the same."* Mr. Justice Hughes in Houck v. Little River Drainage District, 239 U. S. 254, 36 Sup. Ct. 58, 61, 60 L. Ed. 266. Quoted by District Judge Duffy in re Oshkosh Foundry Co., 28 F. Supp. 412, 414. (Italics supplied.)

■ Defendant finds an inconsistency in exempting a state's exaction on the ground that it is a tax from the effect of an order of discharge in bankruptcy and refusing to grant the same exemption to an insurance carrier claiming unpaid insurance premiums from a bankrupt. This is not an inconsistency. It is merely an example of the distinction between the sovereign power of the state and the rights of private citizenry. It is inconceivable that the state has no right by legislative enactment to deprive an employer of common law defenses, unless such employer does not give notice that he refuses to pay contributions to the Workmen's Compensation Fund. It is equally inconceivable that a private insurance carrier could enforce a similar mandate on the same condition, namely, that the employer declined to procure a policy of insurance from such private insurance carrier. This is not inconsistency as stated, it is merely the well-known distinction between the sovereignty of statehood and subservience thereto of citizenry.

Defendant cites *In re William Akers Jr.* 31 F. Supp. 900, which in turn cites *Mosby Coal & Mining Co.* 24 F. Supp. 1022, 1023. In the Akers case, the Pennsylvania Unemployment Compensation Law was under consideration. It was held that, inasmuch as the claim was not filed as a tax claim, but as a debt, and because the Pennsylvania act provides that contributions "shall

be paid in full prior to all other claims except taxes'', clearly indicating that the Pennsylvania legislature did not consider these contributions to be taxes, the claim filed could not be regarded as a tax.

In the Mosby Coal & Mining Company case, consideration was given to the Missouri Unemployment Compensation Act, and the court held that employers' contributions could not be placed on an equal plane with the tax claims, saying:

" * * * The very wording of the Act indicates that it was not to be treated as a tax in the usual sense * * * for it specifically provides that contribution 'shall be paid in full prior to all other claims except taxes' * * *.''

The Oregon Workmen's Compensation Act has no such provision as that last above quoted from the Missouri Unemployment Compensation Act.

"It is obvious that the word 'tax' as used in the Bankruptcy Act is not used in any restricted or narrow sense.

In re Lange Co., 159 F. 586, 20 A. B. R. 478, (D.C. Iowa) : 'It is obvious that the word "tax" as used in the Bankruptcy Act, is not used in any restricted or narrow sense, but is used broadly to include all obligations imposed by the State and general governments under their respective taxing or police powers for governmental or public purposes. That a tax so imposed may not be a general property tax does not deprive it of the character of a tax. Many taxes are imposed under the name of license fees, franchise taxes, or taxes for special purposes under some other name, and are therefore special taxes; but they are nevertheless taxes imposed for public purpose, no matter what the name under which they are levied or imposed, and are clearly within the meaning of the term "tax" as used in the Bankruptcy Act.'

It includes personal taxes.''

Vol. 6, Remington on Bankruptcy, Section 2799, p. 386.

■ The omission from section 102-1745, O.C.L.A., of the words ''shall be given the same priority as taxes'', which are employed in section 126-725, O. C. L. A., as amended by chapter 405, Oregon Laws 1941, p. 690, the former section being a provision of the Workmen's Compensation Act and the quoted language used in the latter section which is part of the Unemployment Compensation Act, is called to our attention as denoting that the contributions in suit prescribed in the Workmen's Compensation Act were not treated by the legislature as a tax.

We do not so construe these provisions. We are not here called upon to decide whether the lien which plaintiff commission might have secured, if defendant had assets to which it would apply, would be prior to all other tax liens or as in case of the lien prescribed in the Unemployment Compensation Act in the absence of labor liens would merely have equal priority with other tax liens. Certainly, the legislature intended that the lien under the Unemployment Compensation Act should be deemed a tax notwithstanding that it is declared to be subject and subordinate to labor liens. We find no good reason for thinking that the legislature held a contrary view with regard to the lien given by the Workmen's Compensation Act.

By reference to the above quoted allegations of plaintiff's complaint with reference to the time defendant's workmen were individually employed, it will be seen that such time aggregated 4173 days, which at the statutory rate of one cent per day would require de-

fendant to retain $41.73 from such workmen's earnings and pay the same to plaintiff commission. Section 102-1742, O. C. L. A., supra.

■■ Plaintiff also alleges that defendant paid to plaintiff the sum of $185.04, and, while it was argued that defendant failed to pay plaintiff his workmen's earnings, which he retained, there is nothing in the record before us upon which we can determine the amount of such retained earnings, if any, which was not paid to plaintiff commission by defendant. It is apparent that the conversion to his own use by such an employer as defendant of earnings retained from wages of his employees, as provided by the Workmen's Compensation Act, would constitute a misappropriation thereof by such employer while acting in a fiduciary capacity; but, in the state of the record before us, no such misappropriation is shown.

We think that the judgment in suit was one based upon a tax levied by the state, Sections 102-1712 and 102-1721, O. C. L. A., supra.

The order of the trial court discharging said judgment is reversed and this cause is remanded with directions that said order be vacated and said judgment in all respects be reinstated.