MUNICIPIO DE CAROLINA, demandante y recurrido, *v.* CARIB-
BEAN ATLANTIC AIRLINES, INC., demandante y recurrente.

*Número*: R-70-134      *Resuelto*: 12 de febrero de 1974

*Francisco Ponsa Feliu, Wilson F. Colberg* y *Miguel A. Valdejulli,*
abogados de la recurrente; *Tomás Sandoval Cruz,* abogado del
recurrido.

EL JUEZ ASOCIADO SEÑOR CADILLA GINORIO emitió la opinión del
Tribunal.

La Caribbean Atlantic Airlines, Inc. (Caribair) impugna
el cobro por el Municipio de Carolina de un cargo un patente
municipal montante a $5,125.50 para el año fiscal 1967–68,
basado en su volumen de negocio durante el año natural 1966.

Los referidos derechos de patente le fueron fijados a la
línea aérea por el Municipio de Carolina haciendo uso de las
facultades que le confería la Ley de Patentes entonces vigente
de imponerlas a toda persona, firma, asociación, sociedad, cor-
poración u otra forma cualquiera de organización comercial o
industrial dedicada a cualquiera de los negocios o industrias
que se mencionan en dicha ley.[1] Al determinar cuales son

_____

[1] Véanse las secs. 621 y 622 del Título 21 de L.P.R.A.

los ingresos municipales, la ley establece que, entre otros, están los obtenidos por concepto de patentes([2]) comerciales e industriales, según la Ley Núm. 26 aprobada el 28 de marzo de 1914, según enmendada, Secs. 621 a 639 de este Título 21. Esa misma Sec. 1479(d) del referido Título 21 hace constar expresamente que el poder de los municipios para imponer patentes no está limitado a los negocios o industrias que se especifican bajo los grupos "A", "B" y "C" en la Sec. 623 del Título 21 de L.P.R.A., sino que dichas patentes pueden también imponerse ". . . sobre los demás establecimientos comerciales e industriales que proveyere la Asamblea Municipal."

El 12 de junio de 1971, se aprobó una nueva Ley de Patentes (la Núm. 27 de ese año), 21 L.P.R.A. 641 *et seq.* (Sup. Acum., 1973, Equity, pág. 351), que derogó la ley anterior; y bajo el grupo "C", dejó intacta la autoridad de los municipios para imponer patentes a las líneas aéreas, al disponer que "además de los comercios, negocios o industrias enumerados en esta sección, la asamblea municipal queda autorizada para incluir y clasificar dentro de los grupos A, B y C, mediante ordenanza o resolución, cualesquiera otros comercios, negocios o industria no enumerados. . . ."

La patente municipal se impuso en este caso basándose en la Sec. 641b del Título 21 de L.P.R.A., ". . . sobre la base del volúmen de los negocios efectuados durante el año inmediatamente anterior. . . ."

Existiendo una diferencia de criterio entre el Municipio y Caribair, ya que la segunda consideraba que no procedía el cobro de la suma fijada en la patente, por estar exenta del pago de dicha patente bajo las disposiciones de la exención contributiva dispuesta en la Ley Núm. 135 de 9 de mayo de 1945, según fue enmendada por la Ley Núm. 77 de 20 de junio de 1966, 13 L.P.R.A. sec. 194 (Sup. Acum.), por ser la

([2]) 21 L.P.R.A. sec. 1479(d).

patente una forma de contribución; y el Municipio considerar que la letra de la Ley Núm. 135, según enmendada, es clara y que la exención contributiva se limita a contribuciones sobre la propiedad mueble e inmueble; y no cubre las patentes municipales; comparecieron ambas partes ante la Sala de San Juan del Tribunal Superior de Puerto Rico con una solicitud o demanda sobre Sentencia Declaratoria, donde, luego de plantearle dicha divergencia de criterios en relación con la interpretación de dicha Ley de Exención Contributiva y estipular los hechos expuestos, pidieron a dicho tribunal que dictara una declaración de los ". . . derechos, estado u otras relaciones jurídicas que de aquellos se deriven y cualquier orden que estime procedente con relación a la determinación de si procede cobrársele a Caribair por el Municipio de Carolina la patente municipal bajo la situación que en adelante se describe." ([3])

El 9 de abril de 1970, la Sala de San Juan del Tribunal Superior dictó sentencia en la cual dictaminó que Caribair venía obligada a pagar los derechos de patente municipal referidos.

La Caribair acude ante nos alegando, en síntesis, que la interpretación de la Ley Núm. 135 de 1945 hecha por el Tribunal Superior es literalista, inconsistente con la totalidad de la ley y con el propósito que inspira la exención contributiva.

La Ley Núm. 135 de 9 de mayo de 1945, según enmendada, 13 L.P.R.A. sec. 194 (Sup. Acum., pág. 171) en su parte pertinente, dispone lo siguiente:

"§ 194. *Transporte aéreo*

(a) Toda persona natural o jurídica que se dedique como porteador público a servicios de transporte aéreo queda exenta, en cuanto a tales servicios, del pago de toda contribución estatal, local y municipal, de cualquier nombre o naturaleza que ésta sea,

---

([3]) Los hechos y las disposiciones legales que arriba hemos expuesto.

sobre todas sus propiedades muebles o inmuebles que actualmente posea o adquiera en lo sucesivo, incluyendo todos los impuestos o arbitrios sobre equipo o materiales, pero sin incluir arbitrios sobre combustibles ni el derecho que la Ley 82, de 26 de junio de 1959, autorizó a la Autoridad de los Puertos a imponer sobre toda gasolina de aviación, todo producto combustible para uso o consumo en la propulsión de vehículos de transportación aérea y toda mezcla de gasolina con cualquier producto combustible para uso o consumo en la propulsión de vehículos de transportación aérea, destinados a consumirse en viajes por aire dentro de los límites territoriales de Puerto Rico.

Asimismo estarán exentos de contribución sobre la propiedad mueble los aviones y equipo relacionado con éstos, arrendados y poseídos por un porteador público dedicado al servicio de transporte aéreo siempre que se establezca a satisfacción del Secretario de Hacienda que tal propiedad está siendo utilizada para tal fin.

(b) Las exenciones provistas en el inciso (a) de esta sección en ningún caso se interpretarán en el sentido de comprender o cubrir contribución sobre ingresos o cuotas pagaderas por virtud de la Ley sobre Indemnizaciones a Obreros por Accidentes del Trabajo, secs. 1 a 42 del Título 11.

(c) . . . ."

De entrada diremos que cuando el Legislador ha querido eximir de las patentes municipales a entidades o negocios exentos del pago de las contribuciones sobre su propiedad mueble o inmueble, así lo ha determinado expresamente. Tomemos, por ejemplo, las disposiciones de la Ley de Incentivo Industrial de Puerto Rico de 1963 (13 L.P.R.A. sec. 252, inciso (c), Sup. Acum. 1973, pág. 196) que dispone lo siguiente:

"§ 252. *Exenciones*

(a) .         .         .         .         .         .         .         .

(b) .         .         .         .         .         .         .         .

(c) Negocios exentos *no estarán sujetos a las patentes, arbitrios y otras contribuciones municipales* impuestas por cualquier

municipalidad, por los períodos que se relacionan a continuación. . . ." (Bastardillas nuestras.) (⁴)

Y también lo dispuesto en el inciso (b) de la Sec. 252 del Título 13 de L.P.R.A. (Sup. Acum. 1973, pág. 195) ; y en el inciso (b) de la Sec. 241 del Título 13, *supra*, a la pág. 183, en igual sentido.

A *contrarius census*, si no existiera la exención del inciso (c), los negocios exentos del pago de contribuciones sobre su propiedad mueble o inmueble, tendrían que pagar las *patentes*, arbitrios y otras contribuciones impuestas por cualquier municipalidad.

■■■■ Sostenemos que una patente municipal, a nuestro juicio, no es una contribución; pero aceptando, a los fines de resolver la cuestión envuelta en este caso, que una patente municipal es una contribución, nos enfrentamos al problema que la patente aquí cuestionada se impuso a base del *volúmen del negocio* para lo cual están autorizados los municipios por la Ley de Patentes, y no sobre las propiedades muebles o inmuebles de Caribair. La letra de la Ley es clara y precisa. La exención del pago de toda clase de contribuciones, estatales, locales y municipales, de cualquier nombre o naturaleza que sean es ". . . *sobre todas sus propiedades muebles o inmuebles que actualmente posea o adquiera en lo sucesivo.* . . ." (Bastardillas nuestras.)

No creemos que exista ningún error en la sintáxis de la disposición, ni que se crea ambigüedad alguna al incluir la referida frase sobre que la exención se concede sobre las propiedades muebles o inmuebles. No hay tal "*interpretación literalista*" como alega Caribair. Cuando la letra de la ley es clara y libre de toda ambigüedad, no debe ser menospreciada bajo el pretexto de cumplir su espíritu. Código Civil, 1930, Art. 14; 31 L.P.R.A. sec. 14. No existe ambigüedad ninguna en la disposición de la ley, al establecer diáfanamente

---

(⁴) Véase también el incisos (j)(1), (j)(2) y (j)(3) de dicha Sec. 252, *supra*.

948

que la exención es en relación con los bienes muebles o inmuebles del porteador.

La disposición (b) de la Sec. 194, *supra*, aclara que en la exención no está incluida la contribución sobre ingreso ni las cuotas a pagarse por concepto de la Ley sobre Indemnización a Obreros. Es natural que así se aclarara, para que no se entendiera que el porteador estaba exento del pago de esas contribuciones, porque, en primer lugar: (1) la contribución sobre ingresos se impone sobre el *ingreso neto* de todo individuo, corporación o sociedad. (13 L.P.R.A. secs. 3011 y 3012; Sup. Acum., 1973, págs. 11 y 12.)

"Ingreso" es el caudal que entra en poder de uno; e "ingresar" significa entrar una cosa y *especialmente dinero.*([5]) (Bastardillas nuestras.)

Como la contribución se impone sobre el ingreso neto que se recibe durante el año; *y ese dinero es una propiedad mueble* del contribuyente, el Legislador consideró necesario excluir esa contribución de la exención; y (2) en cuanto a la cuota por indemnización a obreros, ocurre sustancialmente lo mismo. Las cuotas que se cobran para sostener el fondo estatal para cubrir accidentes industriales, se ha sostenido que constituyen "contribuciones"([6]) (*taxes*).

En el caso de *State Industrial Acci. Commission* v. *Aebi*, 177 Or. 361, 162 P.2d 513; 161 A.L.R. 211 se sostiene que una cuota impuesta por la Ley de Indemnizaciones a Obreros sobre los patronos no deja de ser una contribución porque se aplique a aquellos patronos dedicados a ocupaciones que la Ley declara peligrosas.([7])

---

([5]) Vox: *Diccionario General Ilustrado de la Lengua Española;* Ed. Biblograph, S.A., Barcelona, 1970.

([6]) "Contributions exacted for the support of a state industrial accident fund have been held *to constitute taxes*." (Bastardillas nuestras.) 58 Am. Jur. sec. 553, pág. 921; cita precisa a la pág. 922.

([7]) ". . . an exaction imposed by the workmen's compensation statute upon employers is nonetheless a tax because it applies to such employers as are engaged in occupations declared by the statute to be hazardous." (Ver caso *Aebi*, supra.)

En dicho caso de *Aebi*, supra, se cita con aprobación, la definición del término "contribución" (*tax*) dada por el eminente Juez Presidente que fue del Tribunal Supremo de los Estados Unidos, señor Hughes, cuando era Juez Asociado, como aplicable a las contribuciones requeridas de los patronos bajo la Ley de Desempleo de Wisconsin, cuya definición reza así:

"Una contribución (*tax*) es una impuesta para sufragar los gastos públicos. Se fija sobre alguna regla de prorrateo (*apportionment*) de acuerdo con la cual las personas o propiedad gravadas comparten la carga pública, y, ya sea que la tasación opere sobre todos dentro del Estado, o sobre aquellas pertenecientes a una clase o localidad específica, su naturaleza esencial es la misma. (8) (Traducción nuestra.)

La contribución que se impone al patrono se basa en el importe en dólares y centavos de la nómina corriente de los salarios pagados a todos sus obreros y empleados. 11 L.P.R.A. sec. 20. Ese dinero, importe de la nómina, es de la naturaleza de un bien mueble; y siendo *una contribución sobre bienes muebles* del patrono, hubo la necesidad, de parte del Legislador, de expresar claramente que la exención contributiva concedida a Caribair no incluía esa contribución.

El Legislador excluyó de la exención, específicamente: (1) a los arbitrios sobre combustible; y (2) el impuesto de dos (2) centavos por galón de gasolina que la Ley de 26 de junio de 1959 autorizó a la Legislatura a imponer sobre gasolina de aviación. A nuestro juicio, esas dos exenciones carecen de importancia, para sostener el criterio de que Caribair está exenta del pago de la patente municipal impugnada. Veamos:

---

(8) "A tax is an enforced contribution for the payment of public expenses. It is laid by some rule of apportionment according to which the persons or property taxed share the public burden, and whether taxation operates upon all within the state, or upon those of a given class or locality, its essential nature is the same." (Mr. Justice Hughes in *Houck* v. *Little River Drainage District*, 239 U.S. 254, 36 S.Ct. 58, *In Re Oshkosh Foundry Co.*, 28 F.Supp. 412, 414; y también por el Sr. Juez Federal de Distrito en el caso *Aebi*, supra.)

La Ley Núm. 135 aprobada en 9 de mayo de 1945 (Leyes de ese año, pág. 457) dispone lo siguiente:

"Sección 1. Toda persona, natural o jurídica, que se dedique como porteador público a servicios internacionales de transporte aéreo, queda exenta, en cuanto a tales servicios, del pago de toda contribución insular, local y municipal, de cualquier nombre o naturaleza que ésta sea, *sobre todas sus propiedades muebles o inmuebles* que actualmente posea o adquiera en lo sucesivo, incluyendo todos los impuestos o arbitrios sobre combustibles, lubricantes, equipo o materiales. [Bastardillas nuestras.]

Sección 2. Las exenciones provistas en la Sección 1 en ningún momento se interpretarán en el sentido de comprender o cubrir contribuciones sobre ingresos o cuotas pagaderas por virtud de la Ley sobre Indemnizaciones a Obreros por Accidentes del Trabajo."

Esta Ley originalmente incluía expresamente como propiedad mueble exenta también, los combustibles, lubricantes, equipos o materiales de la porteadora aérea.

Esta Ley fue enmendada, y su texto vigente, en su parte pertinente, es el que aparece a las págs. 945 y 946 de esta opinion (13 L.P.R.A. sec. 194, Sup. Acum., pág. 171); y contrario a la versión original de 1945, *supra*, que incluía expresamente en la exención a todos los impuestos o arbitrios sobre combustibles, lubricantes, equipos o materiales, esta nueva ley no incluye en la exención los ". . . arbitrios sobre combustibles ni el derecho que la Ley 82, de 26 de junio de 1959, autorizó a la Autoridad de los Puertos a imponer sobre toda gasolina de aviación, todo producto combustible para uso o consumo en la propulsión de vehículos de transportación aérea y toda mezcla de gasolina con cualquier producto combustible para uso o consumo en la propulsión de vehículos de transportación aérea, destinados a consumirse en viajes por aire entre Puerto Rico y otros lugares, o en viajes por aire dentro de los límites territoriales de Puerto Rico."

Los arbitrios sobre combustibles se establecieron en virtud de las disposiciones de la Ley Núm. 21, aprobada en 20 de

enero de 1956 (Ley de Impuestos sobre Artículos de Uso y Consumo de Puerto Rico, 13 L.P.R.A. sec. 4030). Tales arbitrios constituían una contribución impuesta sobre los combustibles, que tenían y tienen la naturaleza de una propiedad mueble. Pero esa contribución *se suspendió* por las disposiciones del Art. 1, de la Ley Núm. 82, aprobada el 26 de junio de 1959 (Leyes de ese año, pág. 229; 13 L.P.R.A. sec. 4030 (nota en Historial)), ". . . siempre que la Autoridad de los Puertos *imponga un derecho de dos centavos* por cada galón o fracción de galón sobre dichos productos *en lugar de dicha contribución* y lo cobre a los suplidores del mismo que operen en los aeropuertos de Puerto Rico. (Bastardillas nuestras.) El término "suplidor", según se define en la propia Ley, significa cualquier persona natural o jurídica que se dedique al negocio de suplir los mencionados productos, como también significa los consumidores de los mismos en el caso de que éstos los importen directamente.

Al *suspender* la contribución impuesta sobre los combustibles, que constituyen propiedad mueble, por el *derecho* de dos centavos que la Legislatura autorizó a la Autoridad de los Puertos a imponer por cada galón o fracción de galón de dichos productos, indudablemente que la Legislatura consideró necesario hacer constar expresamente que ese derecho substituto de dos centavos no fuera a considerarse como otra contribución, cuando no lo era, y sí un "derecho" para proveer a la Autoridad de los Puertos recursos propios independientes del poder contributivo del Estado para el financiamiento de mejoras capitales. La Legislatura no tuvo el beneficio de la interpretación judicial que le dió este Tribunal a la referida Ley en el caso de *Esso Standard Oil* v. *A.P.P.R.*, 95 D.P.R. 772 ( Ramírez Bages) (1968), donde expresamos que con el propósito de proveer recursos a la Autoridad fue que se le autorizó *la imposición de un derecho así caracterizado para distinguirla de la contribución que suspendía;* ya que las contribuciones se imponen con el propósito exclusivo de generar

rentas, y en ese caso, el derecho no va dirigido a ese fin, sino a producir ingresos a una instrumentalidad pública para el necesario y adecuado financiamiento de sus fines y propósitos. De que había la posibilidad de que se alegara que el "derecho" referido fuera una contribución, lo demuestra dicho caso de *Esso*, supra; ya que en él se sostuvo que era una contribución, igual a la substituida; y que, por lo tanto, como sostuvo allí la interventora Caribbean Atlantic Airlines, Inc., que la exención que se le había concedido incluía el "derecho" en cuestión; diciendo este Tribunal en dicho caso:

"Resumiendo, de lo expuesto resulta evidente que el derecho que la Asamblea Legislativa autorizó a la recurrida a cobrar es, en efecto un derecho (*fee*) por servicio o uso de facilidades y no una contribución como aquella a la cual sustituyó, . . . ." (*Esso*, supra.)

Por eso, entendemos que la Legislatura quiso evitar dudas, y expresó que en la exención concedida a Caribair no se incluía el referido derecho de dos centavos.

Hemos resuelto repetidas veces que las exenciones contributivas son derogaciones del poder soberano y que no deben entenderse más allá de los términos expresos y exactos del estatuto que los otorga y que toda duda debe resolverse en contra de la existencia de la exención. (*Texas Co. (P.R.) Inc.* v. *Trib. de Contribuciones*, 82 D.P.R. 134, 160 (1961). *Cf. American Nat Bldg.* v. *City of Baltimore*, 224 A.2d 883 (Md. 1966).)

Y los términos expresos, específicos y exactos del estatuto que concede la exención, aquí envueltos, con meridiana claridad, expresan que la exención que se concede es sobre *la propiedad mueble o inmueble* de la porteadora; y la patente impugnada no es una contribución sobre propiedad mueble o inmueble de la porteadora, como hemos expuesto arriba.

Por las razones expuestas, *se dicta sentencia confirmando la del Tribunal Superior, Sala de San Juan, de 9 de abril de 1970.*

El Juez Asociado, Señor Torres Rigual, concurre con el resultado; y los Jueces Asociados, Señores Rigau, Dávila y Díaz Cruz, disintieron.

—O—

Voto disidente del Juez Asociado Señor Díaz Cruz en el cual concurren los Jueces Asociados Señores Rigau y Dávila

San Juan, Puerto Rico, a 12 de febrero de 1974

Una línea aérea del país (Caribair) recurre contra sentencia del Tribunal Superior, Sala de San Juan, en la que se dictamina que no le exime del pago de patentes municipales al municipio de Carolina la letra de la Ley Núm. 135 de 9 de mayo de 1945, enmendada (13 L.P.R.A. sec. 194) que en lo pertinente copiamos:

"Sec. 194. *Transporte aéreo.*

(a) Toda persona natural o jurídica que se dedique como porteador público a servicios de transporte aéreo queda exenta, en cuanto a tales servicios, del pago de toda contribución estatal, local y municipal, de cualquier nombre o naturaleza que ésta sea, sobre todas sus propiedades muebles o inmuebles que actualmente posea o adquiera en lo sucesivo, incluyendo todos los impuestos o arbitrios sobre equipo o materiales, . . . ."

La opinión de la mayoría confirma la sentencia apelada en base a que la exención "se concede . . . sobre la propiedad mueble o inmueble de la porteadora; y la patente impugnada no es una contribución sobre propiedad mueble o inmueble de la porteadora." Llega a esta conclusión diciendo que la patente gravita sobre el "volumen de los negocios" (21 L.P.R.A. sec. 641b—Supto. 1973), concepto que no puede clasificarse como propiedad mueble o inmueble. ¿Podrá haber volumen de negocios si no hay propiedad mueble o inmueble invertida en el tráfico comercial y en el desarrollo industrial? El volumen de negocios no se extrae como el hidrógeno del aire. No es más que el producto o fruto del bien introducido en el comercio

y es por tanto figura inseparable de la propiedad que lo genera. La interpretación literalista([1]) derrota el propósito conocido de la legislación instrumentando el programa de Fomento Económico en nuestra patria. Si la exención contributiva es quizás el mayor incentivo designado para el desarrollo del país, ¿cómo aplicar normas estrechas de interpretación que estuvieron bien en una época donde se consideraba más importante cobrar contribuciones que crear empleos y fomentar riqueza mediante el estímulo a la empresa privada?

El "volumen de negocios" no es figura desligada de la operación exenta; representa ingresos obtenidos por la utilización de capital (bienes) en la actividad industrial. La exención contributiva va dirigida a fomentar y crear no tan solo nuevas y adicionales fuentes de empleo en operaciones industriales sino a mantenerlas en operación para así reducir hasta ir eliminando el desempleo. El propósito de la exención en cuestión es la realización de un fin social y económico de gran necesidad y bienestar para la comunidad. Si el ingreso se deriva de las actividades que en el curso normal y corriente de los negocios propenden a la realización del propósito legislativo y que constituyen las funciones propias y adecuadas para lograrlo, y que se previeron como se puede razonablemente determinar de las disposiciones del estatuto bajo consideración, dicho ingreso cae dentro del ámbito de la exención. *Proctor Mfg. Corp.* v. *Srio. de Hacienda*, 91 D.P.R. 829, 838, Ramírez Bages, J. (1965).

Teniendo en mente lo anterior será fácil ver que las exenciones industriales de contribuciones que concede el Gobierno de Puerto Rico no deben interpretarse como las antiguas exenciones contributivas las cuales eran privilegios, por cuya razón era beneficioso al interés público interpretarlos restrictivamente. Por el contrario, las exenciones *industriales* de contribuciones

---

[1] Los tribunales no deben seguir la ya desacreditada práctica de frustrar el propósito de los estatutos al darle indebido peso a los cánones de interpretación de los mismos. *Alvarez y Pascual* v. *Srio. de Hacienda*, 84 D.P.R. 482, 491, Rigau, J. (1962).

deben interpretarse en forma consonante con su propósito creador. Sólo así se cumple la intención legislativa y además esa interpretación fiel y razonable es la interpretación beneficiosa al interés público. La exención industrial de contribuciones no es una gracia, en el viejo sentido de la frase, que el Gobierno de Puerto Rico confiere sino que es un instrumento que utiliza Puerto Rico para fomentar la industria y la inversión productiva, todo con el alto objetivo final de hacer posible una vida civilizada, material y espiritual, para los habitantes del país. Dichas exenciones son un instrumento realista y eficaz en el esfuerzo del país por eliminar las condiciones 'sub-humanas' que en algunos sectores todavía existen." *Textile Dye Works, Inc.* v. *Srio. de Hacienda,* 95 D.P.R. 708, 713, Rigau, J. (1968).

Al aceptar sólo a los fines del argumento que una patente municipal es una contribución, la opinión ignora que como tal contribución la calificó el legislador en la Ley Municipal al disponer lo siguiente:

*"Sec. 1173. Atribuciones*

Entre las atribuciones de la asamblea municipal estarán especialmente las siguientes, con sujeción a las demás disposiciones de este Subtítulo:

(6) La imposición de *contribuciones* razonables dentro de los límites jurisdiccionales del municipio; Disponiéndose, que a los efectos de la aplicación de la Ley de Patentes de Industria y Comercio decretada por la Asamblea Legislativa de Puerto Rico, el 28 de marzo de 1914, según ha sido enmendada, secs. 621 a 639 de este título, la asamblea municipal queda por la presente autorizada para incluir, mediante ordenanza o resolución, cualesquiera establecimientos o agencias de industrias y comercio que no se hubieren enumerado en la expresada ley." (21 L.P.R.A. sec. 1173, inciso 6.) (Énfasis suplido.)

La patente impuesta por Carolina afecta y grava la propiedad mueble e inmueble de la recurrente y reduce la exención concedida por acto de la Asamblea Legislativa. La acción del Municipio no puede prevalecer.

La sentencia debe ser revocada reconociendo la exención de ley.