WYZANSKI, Senior District Judge.
 

 This appeal involves a tax priority claim made in bankruptcy proceedings. The question presented is whether unpaid “premiums” assessed under the Puerto Rico Workmen’s Accident Compensation Act, 11 L.P.R.A., § 26, par. 3, for a period when an employer was covered but not insured
 
 [1]
 
 constitute “taxes” entitled to priority under § 64(a)(4) of the Bankruptcy Act, 11 U.S.C. § 104(a)(4).
 

 § 64(a)(4) of the Bankruptcy Act, 11 U.S.C. § 104(a)(4) provides:
 

 (a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (4) taxes legally due and owing by the bankrupt to the United States or any State or any subdivision thereof. .
 

 The Puerto Rico Workmen’s Accident Compensation Act, 11 L.P.R.A., § 1,
 
 et seq.
 
 (hereinafter the “WAC Act”) establishes a comprehensive, compulsory insurance system which the parties agree covered Pan American Paper Mills, Inc., (Pan American) and its employees during the years relevant to this case. See § 2. § 8 provides that the act shall be administered by a Manager who shall create a State Insurance Fund (hereinafter called “the Fund”). § 19 obliges every covered employer to insure his employees “in" the Fund. § 28 makes it the duty
 
 *161
 
 of every covered employer to file no later than July 20 of each year a “statement” or report showing the wages paid during the fiscal year that ended on the previous June 30. § 26 authorizes the Manager to assess premiums for the year following the report period, and provides that “said premiums shall be collected semi-annually in advance.” However, the premium for the first semester (July 1 to December 31) is not due until a date specified in the notice of assessment, and the premium for the second semester (January 1 to June 30) is not due until January 2. See § 26.
 

 If the employer does not pay the premium before the end of the relevant semester, the employer is not insured against any accident that occurs during that semester. § 28, par. 6;
 
 The American Railroad Co. of Porto Rico v. Industrial Commission of Puerto Rico,
 
 61 P.R.R. 303, 308 (1943). Under the original form of the WAC Act, as enacted in the Puerto Rico Act of April 18, 1935, if the employer did not pay the premium before the end of the semester, then, because he was not insured for that semester, he was totally excused from any obligation to pay the premium at any time.
 
 The American Railroad Co. of Porto Rico v. Industrial Commission of Puerto Rico, supra.
 
 However, the Puerto Rico Act of May 9, 1942 amended the WAC Act to provide in the third paragraph of § 26 11 L.P.R.A.
 

 In case any employer covered by this Act [chapter] fails to insure properly, the Manager may assess and levy on, and collect from him premiums for all such time as said employer may have remained uninsured, in the same manner as if he were insured.
 

 Both before and after the 1942 amendment, a covered employee of a covered employer had the benefits of the WAC Act even though his employer was uninsured because he had failed promptly to pay a premium he owed. See § 16. That is, the employee was free to proceed to recover from the Fund accident compensation for any covered injury and, in turn, the Fund was entitled to be compensated by the uninsured, but covered employer for all costs thus incurred by the Fund. § 16;
 
 The American Railroad Company of Porto Rico v. Industrial Commission of Puerto Rico, supra.
 

 Pan American failed to pay its WAC Act premiums amounting to $68,250.61 for the years 1972 through 1976. On account of covered injuries which Pan American employees sustained during those years, the Fund paid them $50,897.05.
 

 June 26, 1975 Pan American filed a petition for relief under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701,
 
 et seq.
 
 The Bankruptcy Judge allowed the petition and continued Pan American as a debtor in possession. The Fund filed two claims which were consolidated; the first or priority claim sought $68,250.61 on account of unpaid premiums which the Fund alleged were “taxes” entitled to priority under § 64(a)(4) of the Bankruptcy Act, 11 U.S.C. § 104(a)(4); and the second or unsecured claim sought $50,897.05 on account of compensation for what the Fund had paid to Pan American employees.
 

 The Bankruptcy Judge entered an order allowing both claims and according a § 64(a)(4) tax priority to the first claim. The District Judge affirmed the order, and Pan American appealed.
 

 Pan American’s appeal is based on its argument that
 
 The American Railroad Company of Porto Rico v. Industrial Commission of Puerto Rico, supra
 
 held, and
 
 Central Boca Chica, Inc. v. Treasurer,
 
 54 P.R.R. 404, 417 (1939)
 
 [2]
 
 implied that an obligation imposed upon an uninsured employer to pay a “premium” to the Fund established under the Workmen’s Accident Compensation Act would be a penalty, and that therefore such an obligation cannot be a tax under § 64(a) of the Bankruptcy Act. We reject Pan American’s argument and affirm the District Court.
 

 
 *162
 
 The question whether an obligation is a tax entitled to priority under § 64(a)(4) of the Bankruptcy Act is a federal question.
 
 City of New York v. Feiring,
 
 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941);
 
 New Jersey v. Anderson,
 
 203 U.S. 483, 491, 27 S.Ct. 137, 139, 51 L.Ed. 284 (1906).
 

 It is undisputed and we hold that under federal law for purposes of Bankruptcy Act § 64(a)(4) Puerto Rico is a subdivision of the United States. What is disputed is whether a premium claim covering an elapsed period is a claim for “taxes.”
 

 The Supreme Court, taking a broad view of what constitutes “taxes” within the meaning of § 64(a)(4), has ruled that “the priority commanded by § 64 extends to those pecuniary obligations laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it.”
 
 Ibid; United States v. New York,
 
 315 U.S. 510, 515-516, 62 S.Ct. 712, 714-715, 86 L.Ed. 998 (1942).
 

 That broad approach led lower courts to hold that where, pursuant to an unemployment compensation law, a state exacts from an employer so-called “contributions” a state’s claim for such contributions is entitled to priority as a claim for taxes under Bankruptcy Act § 64(a)(4).
 
 Re William Akers, Jr. Co.,
 
 121 F.2d 846 (3rd Cir. 1941);
 
 Matter of Siegelbaum’s Inc.,
 
 38 F.Supp. 1009 (D.Conn.1941);
 
 Matter of Mid America Co.,
 
 31 F.Supp. 601 (S.D.Ill.1939);
 
 Re Oshkosh Foundry Co.,
 
 28 F.Supp. 412 (D.Wis.1939).
 

 We see no reason not to apply the same approach to situations where pursuant to a workmen’s compensation law a state or subdivision of the United States exacts from an employer so-called “premiums.”
 
 State Industrial Accident Commission v. Aebi,
 
 177 Or. 361, 162 P.2d 513, 161 ALR 211 (1945).
 
 [3]
 
 The reason that such premiums should be treated as taxes within § 64(a)(4) of the Bankruptcy Act is that they are pecuniary obligations imposed by the government for the purpose of defraying the expenses of an undertaking which it authorized.
 

 Appellant’s argument in the case at bar that the Fund’s priority claim of $68,250.61 for premiums is not a tax because in return for the premiums involved in the claim Pan American received no insurance protection rests upon a misconception. Bankruptcy Act § 64 gives priority to a premium claim if it has certain tax characteristics not because it has insurance characteristics.
 
 [4]
 
 The pertinent questions about a so-called premium are whether the government compelled the employer to pay the exaction and whether the payment was for a public purpose.
 

 In determining whether the premiums were “taxes” under Bankruptcy Act § 64(a)(4) it is of no consequence that had Pan American been prompt in paying the premiums it would have had as a
 
 quid pro quo
 
 insurance protection; nor is it of any consequence that since the corporation failed to make prompt payment it had no insurance protection. Pan American is not, except in a colloquial and inexact sense, punished in any way because of its delay.
 
 *163
 
 Pan American is merely failing to get a benefit that it would have enjoyed had it paid its premiums promptly.
 

 Appellant’s contention that Pan American’s own dilatoriness converted a tax obligation into a “penalty” as that term is used in § 57(j) of the Bankruptcy Act, 11 U.S.C. § 93(j), is reminiscent of one of the unsuccessful contentions in
 
 United States v. New York, supra.
 
 There it was argued that 90% of the Title IX,' Social Security Tax on employers was, for purposes of §§ 57 and 64 of the Bankruptcy Act, a penalty and not a tax because that 90% was payable to the federal government only if it were not used as a credit on account of payments made by the taxpayer to a state unemployment compensation fund. See
 
 United States v. New York,
 
 315 U.S. 510, 516-517, 62 S.Ct. 712, 715, 86 L.Ed. 998 (1942). In rejecting that argument, Mr. Justice Byrnes said at p. 517, 62 S.Ct. at p. 715: “Although the employer is free to obtain a credit against it [90% of the Title IX tax] by contributing to his state fund, it cannot be said that it is any the less a tax because the employer has failed, either through choice or lack of resources, to make such a contribution.” So here although the employer is free by paying promptly to obtain insurance protection, it cannot be said that his premium obligation is any the less a tax because the employer has failed, either through choice or lack of resources, to make his premium payment promptly.
 

 From the preceding analysis it follows that the Fund’s priority claim of $68,250.61 was appropriately allowed. Nor do we perceive any reason for reversing the allowance of the Fund’s unsecured claim of $50,-897.05, Puerto Rico in § 16 of the WAC Act imposed upon a covered but uninsured employer an obligation to compensate the Fund for whatever it had paid his employees while he was uninsured; § 26 of that act imposed upon him an obligation to pay ‘.‘premiums.” We are not aware of any principle or of any authority which precludes the Puerto Rico legislature from imposing those obligations cumulatively. The cumulative obligations underline the point that the employer’s so-called premium obligation is not the conventional premium familiar in ordinary cases of insurance, (see 5 Couch on Insurance § 30:1 (2nd ed. I960)), but is indeed a tax which is payable even if it is not advantageous to the employer.
 

 There is no merit in appellant’s preposterous contention that only so much of Pan American’s overdue premiums is payable as represents what the Fund was required to expend to pay Pan American’s employees for the period when the premiums were due but remained unpaid. If adopted, appellant’s contention would have the absurd consequence of giving to Pan American a financial advantage for not having paid its premiums promptly.
 

 Affirmed.
 

 [1]
 

 . Appellant does not directly present the question whether premiums paid by an employer for a period when he was insured constitute “taxes” under Bankruptcy Act § 64.
 

 [2]
 

 . Those two cases were decided with respect to the WAC Act as it stood before the 1942 amendment added paragraph 3 to § 26. Hence those cases could at best offer dicta rather than holdings as to what is the meaning of the present version of § 26.
 

 [3]
 

 . Two early cases,
 
 Matter of Farrell,
 
 211 F. 212 (W.D.Wash.1914) and
 
 Re Eureka Paper Co.,
 
 44 Am.Bank Rep. (F) 179 (D.C.Ref.1919) held that a payment by an employer to a workmen’s compensation act fund is not a tax. The reason given in
 
 Farrell
 
 (p. 213), that the exaction is “an assessment against a class for the benefit of a class”, is in the spirit of the subsequent decision involving the Agricultural Adjustment Act,
 
 United States v. Butler,
 
 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477 (1935), virtually overruled by the Social Security Act cases,
 
 Carmichael v. So. Coal & Coke Co.,
 
 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937),
 
 Steward Machine Co. v. Davis,
 
 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279 (1937), and
 
 Helvering v. Davis,
 
 301 U.S. 619, 57 S.Ct. 904, 81 L.Ed. 1307 (1937).
 

 [4]
 

 . See
 
 State Industrial Accident Commission v. Aebi, supra,
 
 which rejected the argument that an exaction from an employer to contribute to a workmen’s compensation act fund could not be a tax for the purposes of Bankruptcy Act § 64 because “under the Workmen’s Compensation Law the employer is paying for insurance which directly benefits him whereas under Unemployment Compensation Law the employer is simply contributing to a fund, which is to be expended for the general welfare.” (162 P.2d at p. 516).