STANDARD PROPERTIES, INC. ET AL. *v.*
EMPLOYMENT SECURITY BOARD OF MARYLAND

[No. 33, October Term, 1952.]

2

*Decided November 11, 1952.*

The cause was argued before DELAPLAINE, COLLINS and HENDERSON, JJ.

*William Lentz* and *Francis W. Hill, Jr.*, with whom were *White, Page & Lentz* on the brief, for the appellants.

*James N. Phillips*, with whom were *Hall Hammond, Attorney General*, and *Aaron A. Baer, Special Assistant Attorney General*, for the Employment Security Board of Maryland.

DELAPLAINE, J., delivered the opinion of the Court.

This appeal comes here from an order of the Superior Court of Baltimore City affirming an order of the Employment Security Board of Maryland rejecting the request of an employer for refund of contributions paid into the unemployment compensation fund.

The employer, Standard Properties, Inc., and its predecessor partnership, Standard Properties, has been engaged in the construction of houses in new developments in the suburban section of Washington. The partnership was composed of three brothers, Raleigh, Cushing and Clarke Daniel, Raleigh and Cushing acting as the architects and Clarke as promoter. In 1940 they completed

plans for two sections of a development named Eastpines, calling for 106 houses in Section 1 and 112 houses in Section 2. In April, 1942, when the houses in Section 1 were in different stages of construction and work had begun in Section 2, Raleigh entered the Navy. Early in 1943, when the houses in Section 1 were completed and those in Section 2 were in different stages of construction, Cushing entered the Navy. Thus the task of looking after the completion of the houses and their sale or rent devolved upon Clarke. By October 1, 1944, all of the houses were completed. From October 1, 1944, to December 31, 1945, while Raleigh and Cushing were in the Navy, there were no building operations. During that period Clarke arranged for the sale of some of the houses, handled second trust notes, rented some of the houses, collected rents, kept the books of the firm, and performed other necessary duties in carrying on the business. Early in 1946 Raleigh and Cushing were discharged from the Navy, and they immediately commenced the building of houses in Sections 3, 4 and 5 of Eastpines.

From 1946 to 1950 the employer made payments of contributions to the unemployment compensation fund at the standard rate of 2.7 per cent of the wages paid to the employees. That rate was prescribed by the Maryland Unemployment Compensation Law, which was enacted by the Legislature of Maryland in 1936 pursuant to the Federal Social Security Act. Laws 1936, Dec. Sp. Sess., ch. 1.

In 1943 the Legislature passed an amendatory Act providing that, while the standard rate of contribution payable by the employer shall be 2.7 per cent, the rate shall be reduced when the employer's experience-rating record shows that the benefits paid from the unemployment compensation fund had dropped below a certain benefit ratio. This Act provides that the benefit ratio to be computed for each employer shall be "the quotient obtained by dividing the total benefits chargeable to his experence-rating record which were paid within the

36-consecutive-calendar-month period ending on the computation date by the total of his annual pay rolls for the three calendar years immediately preceding that computation date."

The Act further provides that no employer's rate shall be varied from 2.7 per cent for any fiscal year "unless and until his experience-rating record has been chargeable with benefits throughout the 36-consecutive-calendar-month period ending on the computation date * * * and unless and until each of his annual pay rolls * * * during the four calendar years immediately preceding the computation date for that fiscal year equals or exceeds $150.00." Laws 1943, ch. 435, Code Supp. 1947, art. 95A, sec. 7.

In 1950 the Legislature passed an Act, which was approved by the Governor on March 28 and took effect on June 1, designed to prevent veterans of the Second World War, who were employers at the time they entered the service, from losing their experience-rating record, by permitting the presumption of a pay roll even though the veterans had none. The provision added by the Legislature for the benefit of veterans is as follows: "In computing his experience-rating record, the time the business of an individual was discontinued because of his service in the armed forces during the war shall be considered as if the business was operating continuously during such period and shall be deemed to have had annual payrolls exceeding $150.00 in each year of such period." Laws 1950, ch. 70, Code 1951, art. 95A, sec. 7.

After that Act was approved by the Governor, the employer applied to the Employment Security Board for a refund of $9,178.95 paid as contributions during the period from July 1, 1946, to June 30, 1950. The employer claimed that, under the Act of 1950, it should be presumed that it had annual pay rolls exceeding $150 for more than four years. Thus it claimed that its rate of contribution should have been only .9 per cent for the third and fourth quarters of 1946 and the

first and second quarters of 1947, 2.1 per cent for the third and fourth quarters of 1947 and the first and second quarters of 1948, and .3 per cent for the period from the beginning of the third quarter of 1948 to the end of the second quarter of 1950.

The statute provides that if any individual or organization shall make application to the Employment Security Board for a refund or credit of any amount paid as contribution or interest, and the Board shall determine that any amount was erroneously collected, the Board may either allow a credit therefor or refund the amount erroneously paid. If any claim for refund is rejected, a notice of rejection shall be forwarded to the employer, and within ten days thereafter the employer may petition for a formal hearing. After the hearing the Board shall make such order as may appear just and lawful. Within twenty days after the entry of such order, the employer may appeal to the Superior Court of Baltimore City for a judicial review of the Board's action. An appeal may also be taken from the order of the Superior Court to the Court of Appeals of Maryland. Code 1951, art. 95A, sec. 14.

On November 16, 1950, this employer was notified that no refund was due under the Act of 1950. The employer then filed a petition for a hearing, which was held on March 30, 1951. On May 3 the Board rejected the employer's request, and from that action the employer appealed to the Superior Court.

In June, 1951, Donald G. Heyne, who was elected president of the company after its incorporation, discovered that the partnership had paid $350 in wages to William M. O'Neil in December, 1945. O'Neil, who had been a building superintendent for the partnership prior to 1942, returned to its employ before the close of 1945 to do some work in preparation for the resumption of building operations. Accordingly, on July 5, 1951, the employer filed an amended contribution return for the last quarter of 1945. This amended return showed that the partnership had paid $350 in wages

in that quarter. The successor corporation, after a delay of about five years, paid $3.15 as contribution on those wages computed at the rate of .9 per cent, and also $2.15 as interest.

On account of the president's discovery, the Board agreed to hold another hearing. At that hearing held on September 27, 1951, it was claimed that the failure of the partnership to report the wages paid to O'Neil was due to Clarke Daniel's misunderstanding that it was not necessary to report any wages paid at the rate of more than $3,000 per year. On October 8, 1951, the Board again rejected the employer's request on the ground that the rates of contribution for the periods in question could not be reduced by a payment made in 1951.

The employer thereupon filed a supplemental petition in the Superior Court praying for a review of the Board's second order. Finally on March 20, 1952, the Court affirmed the action of the Board.

The Unemployment Compensation Law, which imposes upon employers the obligation to pay a certain percentage of their pay rolls into the unemployment compensation fund, is an exercise of the taxing power of the State. The contribution demanded of the employer by this statute is an excise tax imposed by the Legislature in the exercise of the police power. *Maryland Unemployment Compensation Board v. Albrecht,* 183 Md. 87, 36 A. 2d 666; *Saunders v. Maryland Unemployment Compensation Board,* 188 Md. 677, 53 A. 2d 579; *Carmichael v. Southern Coal & Coke Co.,* 301 U. S. 495, 57 S. Ct. 868, 872, 81 L. Ed. 1245, 109 A. L. R. 1327.

The statute provides definitely that no employer's rate of contribution shall be varied from the standard rate of 2.7 per cent for any fiscal year unless each of the annual pay rolls during the four calendar years immediately preceding the computation date for that fiscal year equals or exceeds $150. The term "annual pay roll" means the total amount of wages for employment paid by an employer within any calendar year with respect

to which contributions have been paid on or before the computation date. The "fiscal year" is the period from July 1 of each year through June 30 of the next year. The "computation date" with respect to rates of contributions for any fiscal year means March 31 of the preceding fiscal year.

By mandate of the Legislature, the Employment Security Board was required to base the employer's rate of contribution after July 1, 1946, upon its reports for the years 1942, 1943, 1944 and 1945. The employer reported that it had paid no wages during the year 1945. Thus, since each of the pay rolls during the four calendar years immediately preceding March 31, 1946, did not equal or exceed $150, the employer did not meet the statutory requirements for a reduced rate based upon its experience-rating record. Consequently it was mandatory for the Board to fix the rate at 2.7 per cent for the fiscal year beginning July 1, 1946.

The employer complains that it would be inequitable to be deprived of the benefit of the reduced rate, and thus lose $9,178.95 merely because of a failure to pay a contribution of $3.15, which should have been paid in 1946. Before an employer is entitled to a reduced rate of contribution, however, he must affirmatively show that he is clearly entitled to such a rate. We apply in this case the general rule of strict construction that is applied in the consideration of tax exemption statutes. In case of doubt as to the intention of the Legislature, the presumption is in favor of the taxing power and the burden is on the claimant to establish his right to exemption by bringing himself clearly within the terms of the conditions imposed by the statute. *Pittman v. Housing Authority of Baltimore City,* 180 Md. 457, 25 A. 2d 466; *State Tax Commission v. Standard Oil Co. of New Jersey,* 181 Md. 637, 31 A. 2d 621; *Clarke v. Union Trust Co. of District of Columbia,* 192 Md. 127, 63 A. 2d 635; *Shaughnessy v. Linguistic Society of America,* 198 Md. 446, 84 A. 2d 68. Moreover, as stated in *Grand Lodge of Maryland, Knights of Pythias v. City*

*of Baltimore,* 157 Md. 551, 146 A. 744, in any controversy over the construction of a statute providing for the imposition and collection of taxes, the court is governed by the rules of law and not by the principles of equity.

The employer has relied upon the Act of 1950, enacted for the benefit of the veterans of the Second World War. We acknowledge that civil relief acts for soldiers and sailors should be liberally construed to protect those who serve in the armed forces of their country. *Boone v. Lightner,* 319 U. S. 561, 63 S. Ct. 1223, 1231, 87 L. Ed. 1587. But we are dealing here with a statute imposing a tax which can be reduced only when the taxpayer meets certain requirements. The employer in this case did not meet those requirements.

The underlying question is whether "the business of an individual was discontinued because of his service in the armed forces during the war." It is not necessary in this particular case to decide whether a partnership may be deemed to be "an individual" within the contemplation of the statute. For we think it is entirely clear that the business of this partnership was not discontinued during the war. After the two brothers entered the Navy, the third brother managed the business. During 1943 and 1944 he supervised the completion of the houses in Eastpines. It is true that those houses were completed prior to October 1, 1944. However, the important job of selling or renting about two hundred houses still remained. That work fell upon Clarke Daniel. In addition to the two tracts of land known as Eastpines and Fairfield, the partnership owned trust notes and ground rents and a warehouse in Washington bringing a monthly rent of $200. Clarke employed his wife, who had secretarial experience, to assist with the bookkeeping, and she was paid by the firm upon an hourly basis. He also employed an accountant, who was paid upon a monthly basis. Neither the wife nor the accountant was considered as an employee under the Maryland law.

In view of those circumstances, in addition to the fact that it is now admitted that wages were paid to

O'Neil in 1945, we, cannot accept the contention that the business was discontinued. The loss of the experience-rating record was due, not to a discontinuance of the business, but to the employer's failure to report the wages which were paid in 1945.

As the employer failed to show that he met the requirements for a reduced rate of contribution, he was not entitled to the refund requested. The order of the Court below affirming the order of the Board will therefore be affirmed.

*Order affirmed, with costs.*