## STATE INSURANCE COMMISSIONER v. NATION-WIDE MUTUAL INSURANCE COMPANY

[No. 9, September Term, 1965.]

*Decided January 5, 1966.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY, and OPPENHEIMER, JJ., and CHILDS, J., Associate Judge of the Fifth Judicial Circuit, specially assigned.

*John C. Cooper, III, Assistant Attorney General,* with whom was *Thomas B. Finan, Attorney General,* on the brief, for appellant.

*M. King Hill, Jr.*, with whom were *Joseph M. Roulhac* and *Smith, Somerville & Case* on the brief, for appellee.

PRESCOTT, C. J., delivered the opinion of the Court.

The Baltimore City Court affirmed a decision of the Maryland Tax Court, which abated an assessment of retaliatory insurance taxes or obligations by the Insurance Commissioner against Nationwide Mutual Insurance Co., and the Commissioner has appealed.

One question only is presented for determination:

"Is a foreign insurance company doing business in Maryland entitled to a credit on its retaliatory tax return filed pursuant to Article 48A, Section 46 of the Code for those amounts paid by it for support of the Unsatisfied Claim and Judgment Fund assessed under Article 66½, Section 151 of the Code?"

Nationwide is an Ohio corporation, duly qualified and admitted to do business in this state. As a foreign insurance company, it is required to file, each year, a "Maryland Premium Tax Report" with the Commissioner for taxes and obligations, etc., imposed by Code (1957), Article 48A, Section 46, which is popularly known as the "Retaliatory Tax Statute." [1]

---

1. The statute provides:

"When by the laws of any other state or foreign country any premium or income or other taxes, or any fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions are imposed upon Maryland insurance companies doing business, or that might seek to do business in such other state or country, or upon the agents of said companies, which in the aggregate are in excess of such taxes, fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions directly imposed upon insurance companies of such other state or foreign country under the statutes of this State, so long as such laws continue in force, the same obligations, prohibitions and restrictions of whatever kind shall be imposed upon insurance companies of such other state or foreign country doing business in Maryland. Any tax, license or other obligation imposed by any city, county or other political subdivision of a state or foreign country on Maryland insurance companies or their agents shall be

Ordinarily, three steps are taken in calculating the tax or obligations, if any, due under the statute. First, it is determined, in the aggregate, the total "premium or income or other taxes * * * or other obligations" which a Maryland company writing, in premiums, the same volume of insurance in Ohio as Nationwide writes in Maryland would be required to pay to the State of Ohio. Second, the total, in the aggregate, of all "premium or income or other taxes," etc., which Nationwide is required to pay to the State of Maryland is calculated. Third, if the aggregate amount of taxes or obligations computed on the Ohio basis exceeds the aggregate amount thereof computed on the Maryland basis, the difference is the net retaliatory tax or obligation due and payable to Maryland.[2] Ohio has a higher basic premium tax rate than Maryland, and, as a result, Ohio companies, after the yearly aggregate totals are calculated, usually find themselves indebted, in varying amounts, to the State of Maryland.

In stating the tax due on its reports filed for 1959, 1960, and 1961, Nationwide included in the aggregate of "premium * * * or other taxes * * * or other obligations" exacted by Maryland, payments of some $78,000 made by it to the Unsatisfied Claim and Judgment Fund (Fund), as required by Code (1957), Article 66½, Section 151 (Section 151). The Commissioner, by letter, approved this method of calculation, but

---

deemed to be imposed by such state or foreign country within the meaning of this section, and the Insurance Commissioner for the purpose of this section shall compute the burden of any such tax, license or other obligations on an aggregate statewide or foreign-country-wide basis as an addition to the tax and other charges payable by similar Maryland insurance companies or their agents in such state or foreign country. The provisions of this section shall not apply to ad valorem taxes on real or personal property or to personal income taxes."

2. A simple illustration, dealing only with the regular tax follows:

| Ohio Basis: | | Md. Basis: | |
|---|---|---|---|
| Regular Tax at 2½% = | $2,500 | Regular Tax at 2% | = $2,000 |
| | | Retaliatory Ass't | = $ 500 |
| Total | $2,500 | Total | $2,500 |

later reversed his position relative thereto as a result of an opinion from the Attorney General's office, and asserted a claim against Nationwide for additional retaliatory taxes of $77,062.56. Nationwide requested a ruling by the Commissioner to the effect that it was entitled to take credit for the payments made to the Fund, and, when this request was not complied with, it appealed to the Maryland Tax Court, where the ruling of the Commissioner was reversed. On appeal to the Baltimore City Court, the Maryland Tax Court was affirmed, as noted above, and this appeal followed.

The briefs on both sides have been prepared with commendable care, skill and ability, and have been very helpful to the Court in its determination of the case.

Nationwide was required by Section 151, a statute of the State of Maryland, to make the payments; hence, under the explicit language employed in Section 46, our question narrows to whether such payments were encompassed within the terms "taxes, fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions." It is conceded by the parties that if they were Nationwide should prevail, and if they were not the Commissioner should.

We shall not take up each of the terms and consider them separately. For the purposes of this opinion, we shall assume, without deciding, that the payments did not come within the purview of "taxes, fees, fines, penalties, licenses [or] deposit requirements." (In *Allied Amer. Mut. Fire Ins. Co. v. Comm'r*, 219 Md. 607, we referred to such payments as a "tax," but we were discussing the constitutionality of the assessments on insurance companies for the support of the Fund and not the specific nature of such payments in the context of the statute. Although not excluding the possibility that the payments may properly be classified as "taxes," we find it unnecessary to base our conclusion herein on such a classification.)

This leaves for our consideration the terms "or other obligations." To sustain his position, the Commissioner relies principally upon two rulings of the Attorney General of Maryland's office, the familiar rule of construction (or maxim) *ejusdem generis,* and the cases of *Comonwealth v. Fireman's Fund Ins. Co.,* 87 A. 2d 255 (Pa.) ; *Indemnity Ins. Co. v. Stowell,* 174

N. E. 2d 536 (Oh.) ; and *Farm Bureau Mut. Ins. Co. v. Neel,* 55 *Dauphin Cty. Rep.* 325, 335 (Pa.).

We do not find these authorities persuasive to the extent of controlling our decision herein. The first opinion from our Attorney General's office (44 Op. A. G. 197) dealt with the converse of the situation in the case at bar. New Jersey had an U. C. & J. F. and related funds to which foreign corporations were required to contribute a percentage of their premium income. During the period of time involved in the opinion, Maryland had no Fund. The question was whether payments made to the New Jersey funds by Maryland companies should be included in the calculation, for retaliatory purposes, of the amounts due Maryland from New Jersey companies under Section 46. Mainly upon the ground that the New Jersey funds were "in the nature of [trusts]," the Assistant Attorney General concluded there was "serious doubt" that the assessments paid into such funds were intended to come within the purview of "other obligations" as the phrase was used in Section 46, and, since the doubt should be resolved in favor of the taxpayer, the Commissioner should not invoke the statute as to the assessments paid to the New Jersey funds.

In the second opinion, the case at bar was the subject matter of the opinion. The Assistant Attorney General felt that the prior opinion from his office was controlling, and "consistency require[d]" that he be governed by the conclusion there reached. No mention was made of the "serious doubt" feature of the first opinion, and that in the later opinion, the doubt, if any, was, on this occasion, being resolved against the taxpayer. 48 Op. A. G. 220.

Our reading of the opinion in *Commonwealth v. Fireman's Fund Ins. Co., supra,* leads us to the conclusion that it lends as much support to appellee's cause as to the appellant's. It points out that the purpose of its retaliatory tax statute, drawn in terms very similar to ours, was "to bring about equality of treatment between domestic and foreign corporations * * *," and states "the charge imposed [by the statute] is in the nature of a license fee levied under the police power." (See also *Philadelphia Fire Ass'n v. New York,* 119 U. S. 110, where the Supreme Court held that a similar retaliatory charge imposed by

New York was "an entrance fee" or "license fee." The Attorney General of New York reached the same conclusion in his opinion of 1944, *infra,* which reads as follows: "these [payments required by statute to be made to the Fire Patrol] are *obligations* \* \* \* imposed, by statute, for the privilege of doing business in the State.") (Emphasis added.) It then went on to hold that when its statute spoke of "taxes, fines, penalties, licenses, fees or other obligations," the phrase "or other obligations" meant "or other obligations of *similar* [not identical] *nature."* (Thus, it will be noted that full and accurate consideration was given to the rule of *ejusdem generis,* which we deal with below.) The Court further held that payments made by the insurance company to a "Fire Insurance Patrol," whose members stood by damaged property and property exposed to damage after firemen had left it, were in no way similar to the specific items named in its statute, because the assessment was "not levied by the Commonwealth [although it was authorized by statute] but by the Patrol itself and it is collected and disbursed by that organization, a private body and not a part of the government. The Commonwealth in no way controls the amount, collection or use of the funds." The Court concluded by stating that the payments made to the Patrol were no more than a *quid pro quo* for the benefits received from it.

And we are unable to find anything of substantial solace to appellant's contentions in the opinion rendered in the *Stowell* case, *supra.* The Court simply held that under the Ohio retaliatory tax statute, taxes, license fees and "fees to be paid the county recorders" should be aggregated, and, since the terms "or other obligations" in its statute comprehended and included only obligations "similar to those specified" (just as the Pennsylvania Court held as above noted), one of the insurance companies involved was not entitled to take credit for the "expense of publishing its certificate of compliance as required by Section 3905-11," or other costs with respect to filings with the county recorders.

We shall not discuss the *Neel* case, *supra,* at any great length. Although we do not find ourselves in serious disagreement with anything said in the opinion therein (insofar as it relates to the issues involved in the case at bar), the factual situation there

was so entirely different from that presented here, we find little in the opinion to aid in the solution of our problem. In any event, we have set forth and discussed somewhat in detail the later case of *Fireman's Fund Ins. Co., supra,* and that case was decided by the Supreme Court of Pennsylvania.

An opinion of the Attorney General of Ohio (Informal Opinion No. 544, Dec. 28, 1962) reaches the same conclusion as our Attorney General on the "special purpose" or "trust" fund theory relative to assessments to certain funds assessed in New York similar to the U. C. & J. F.; but the Attorney General of New York has taken a different view (see Report of Attorney General of N. Y. for 1944, p. 257 and an opinion dated June 26, 1945), and the administrative officials in both New York and New Jersey permitted Nationwide to take credits for assessments made to similar funds as the U. C. & J. F. in 1959 and 1960.

Without elaborately discussing the rule of construction *ejusdem generis,* we simply point out that it does not require that a general provision in a statute be limited in scope to the precise or identical things and items previously specifically named, nor does it apply when the context manifests a contrary intention. Black's Law Dictionary (4 ed.) ; 28 C.J.S., *Ejusdem,* p. 1049. We agree with the Ohio and Pennsylvania Courts, and hold that "or other obligations" in Section 46 means "or other obligations of a similar nature to the specific items previously named." Thus our problem again narrows so that it may now be stated: Do the assessments called for by Section 151 come within the scope of being obligations similar to, or in the nature of "taxes or any fees [or] licenses"?

Although the courts (as well as the Attorneys General) have sometimes differed on what are, and what are not, proper deductions in determining the amount due under retaliatory tax laws, they seem to be in universal accord as to the over-all purpose of such legislation. Such statutes are not of recent origin. Maryland has had such a law since, at least, as early as 1872 (Ch. 388 Acts of 1872) ; other States have likewise had similar laws for years. They all seem to have, possibly varying in slight degree, the same general goal or objective. In the early case of *Talbott v. Fidelity & Casualty Co.,* 74 Md. 536 (1891),

this Court stated, simply, tersely and well, what that goal was: "The design was to put insurance companies, coming from other States, into the same position as ours would be in the State whence they came." This is in accord with decisions elsewhere and the conclusions of many writers upon the subject. 27 Virginia L. Rev., *Retaliatory Taxation of Insurance Companies*, p. 686; Anno: 91 A.L.R., *Retaliatory Tax Laws*, 795; *Life & Cas. Ins. Co. v. Coleman*, 25 S. W. 2d 748 (Ky.); *Occidental Life Ins. Co. v. Holmes*, 80 P. 2d 383 (Mont.); *Cochrane v. Bankers' Life Co.*, 30 F. 2d 918 (C. A., 8); *Indemnity Ins. Co., etc., v. Stowell, supra.*

Having in mind its underlying purpose and objective and its explicit terms, Section 46, as we read it, is a statute calling for parity of treatment of foreign and domestic insurance companies, relative to the items mentioned therein. By its express terms, it is an aggregate type statute, i.e., it calls for a determination of the tax or obligation, etc., due by a comparison of the aggregate economic burdens and exactions (as named in said section) of each state. Under it, the tax is to be calculated by placing all of the economic burdens and exactions of Ohio named in Section 46 on one side of an equation, all of the economic burdens and exactions of Maryland as named in said section on the other side, and then bringing the equation into balance. The statute, we think, is clear on this point and, as stated above, similar statutes have been so construed by other courts to this effect.

Still bearing in mind the over-all purpose and aim of the statute and its terms, it is difficult to see how it can be seriously argued that the phrase "or other obligations" was intended to be limited to the *specific* things in the words preceding it. Apart from the fact that this argument was rejected in *Talbott, supra,* in regard to "or prohibitions" in the statute as it then read, to make such a ruling would stretch the meaning of *ejusdem generis,* require a strained construction of the terms used, force them from their natural, ordinary and plain meaning, and reach a result inconsistent with the obvious intent of the Legislature.

The exactions imposed by Section 151 are, we think, similar in character to both "taxes" and "licenses," specific items named

in the statute preceding "or other obligations." Their payment is a prerequisite to the continuance of a foreign corporation's doing business in this state, and, at least to that extent, are in the nature of license fees, as pointed out in *Fireman's Fund Ins. Co.* and *Philadelphia Fire Ass'n*, both *supra*. And license fees are, in reality, taxes. *Stowell, supra*. See also 2 *Bouv. Law Dict.* (Rawle's 3rd Rev. Ed.) p. 1974. The assessments are paid into a fund, which is administered by a Board as provided by state statute, two members of which, *ex officio,* are state officials.

Moreover, the assessments are substantial in nature, as shown by the amount of money involved in the claim herein. We pointed out above that the purpose of Section 46 was not to favor Maryland insurance companies or discriminate against foreign ones, but to render evenhanded treatment to both domestic and foreign companies. We think the substantial nature of these assessments is a further indication that the Legislature, aiming to place insurance companies on like footings, did not intend to exclude such assessments as credits to Nationwide in the calculation of the amount due from it under the Statute.

In addition to what we have said above, it will be noted that Section 46 specifically excluded its application to certain items. Where a statute expressly provides for certain exclusions, others should not be slightly read therein by implication, for if the Legislature intends other exclusions it is so easy to add them to the already-named explicit ones. Cf. *Vanderford v. Farmers' Bank*, 105 Md. 164; *Fowel v. State*, 206 Md. 101; 2 *Sutherland Statutory Construction* (3 ed.), § 4915.

We, therefore, hold that the assessments called for by Section 151, come within the scope of the phrase "or other obligations" in Section 46, and Nationwide is entitled to the credits claimed for 1959, 1960, and 1961.

The appellant mildly suggests that the Legislature has given "at least presumptive weight" to his construction of Section 46 by the enactment of Code (1964 Rep'l Vol.), Article 48 A, § 61. We deem it unnecessary and undesirable to enter into a construction of that statute at this time, for, if we do, it probably will amount to no more than dictum. If the Legislature intended to change its previous enactments relative to the ques-

118

tion involved, it is more desirable to say so when, and if, the question is presented for our determination.

*Judgment affirmed, with costs.*