536 A.2d 714

**WORKMEN'S COMPENSATION COMMISSION,**

v.

**PROPERTY & CASUALTY INSURANCE GUARANTY CORPORATION.**

No. 645, Sept. Term, 1987.

Court of Special Appeals of Maryland.

Feb. 4, 1988.
Certiorari Granted June 2, 1988.

Julia M. Freit, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Mary C. Keane, Staff Attorney, on the brief), Baltimore, for appellant.

Albert J. Mezzanotte, Jr. (J. Norris Byrnes, Philip B. Barnes and Whiteford, Taylor & Preston, on the brief), Towson, for appellee.

Argued before GILBERT, C.J., and BLOOM and POLLITT, JJ.

POLLITT, Judge.

The Property and Casualty Insurance Guaranty Corporation (PCIGC) is a private, nonprofit, nonstock corporation created by the Legislature "to provide a mechanism for the prompt payment of covered claims under certain insurance

policies and to avoid financial loss to residents of Maryland who are claimants or policyholders of an insurer, including surety, which has become insolvent...." Maryland Code (1957, 1986 Repl. Vol.), Art. 48A, § 504. All insurers writing any kind of direct insurance, except life insurance, health insurance and annuities, are required to be members of the corporation as a condition of their authority to transact insurance business in the State.[1] PCIGC is "exempt from payment of all fees and all taxes levied by this State or any of its subdivisions except taxes levied on real or personal property." Art. 48A, § 515.

Under the provisions of the Worker's Compensation law, the Subsequent Injury Fund (SIF), Article 101, § 66, and the Uninsured Employers' Fund (UEF), Article 101, § 90 et. seq., are partially funded by assessments levied against employers and their insurers. When an employee is granted a worker's compensation award, the employer or insurer paying the claim is charged with SIF and UEF assessments, which are computed as percentages of the award.

After the Workmen's Compensation Commission[2] (WCC) invoiced PCIGC for SIF and UEF assessments in cases where PCIGC had paid claims of injured workers because the employer's insurer had become insolvent, PCIGC filed a complaint for injunctive and declaratory relief against WCC

---

**1.** PCIGC is the latest in a long line of entities created for similar purposes. Its immediate predecessor, The Maryland Insurance Guaranty Association (MIGA) created by Ch. 703, Acts of 1971, succeeded the Motor Vehicle Security Fund, created by Ch. 912, Acts of 1965 and repealed by Ch. 651 Acts of 1975. As originally enacted, MIGA did not include workmen's compensation insurance. The Workmen's Compensation Insolvency Fund, established by Ch. 149, Acts of 1967, was transferred to MIGA by Ch. 599, Acts of 1981, which repealed §§ 85–89 of Article 101 dealing with liability for awards against insolvent workmen's compensation insurers.

**2.** By Ch. 279, Acts of 1984, in any revisions of Article 101, the term "workmen's compensation" is to be revised to read "workers' compensation." The terms are synonymous. *See* Maryland Code (1957, 1985 Repl. Vol.), Art. 101, § 14A.

in the Circuit Court for Baltimore County. That court (Jacobson, J.) determined

> that the assessments required by [A]rt. 101[,] §§ 66 and 91 are such "taxes or fees" as are contemplated by [A]rt. 48A[,] § 515.... [and] that PCIGC is not liable for the payment of such assessments.

From that judgment, the Commission appeals, asserting two questions, which it states as:

1. Whether the Circuit Court erred in holding that the Article 101 assessments are fees or taxes within the meaning of Article 48A, § 515.

2. Whether the Circuit Court erred in construing Article 48A, § 515 so as to create a conflict between that provision and other provisions governing the obligations of the PCIGC, and in leaving unresolved the question of who is responsible for the payment of the Article 101 assessments after an insurer becomes insolvent.

We agree with the trial judge that the sole issue before him was whether the SIF and UEF assessments constitute "fees or taxes." If so, under the plain language of Article 48A, § 515, PCIGC is exempt from paying them.[3]

■ As Judge Jacobson observed, a review of a multitude of authorities attempting to define "fees" and "taxes" reveals no clear rule, the definitions varying from case to case in accordance with the particular facts in controversy. We have been referred to no appellate decision specifically holding that the assessments levied to support the Subsequent Injury Fund and the Uninsured Employers' Fund are or are not "fees or taxes." In his dissenting opinion in *Cooper v. Wicomico County*, 284 Md. 576, 585, 398 A.2d 1237, 1242 (1979), Judge Eldridge characterized the SIF assessments as

---

**3.** For a similar exemption applicable to the Maryland Life and Health Insurance Guaranty Association, *see* Article 48A, § 535.

in the nature of a general tax assessed against members of a certain group to cover expenses of administering a government program involving that group.

*See also Cooper v. Wicomico County,* 278 Md. 596, 607, 366 A.2d 55, 62 (1976) (Eldridge, J., dissenting). Although that statement is contained in a dissenting opinion, the nature of the assessment was not the point of disagreement with the majority.

In *Allied American Co. v. Comm'r,* 219 Md. 607, 150 A.2d 421 (1959), insurers challenged the assessments imposed upon them to partially finance the Unsatisfied Claim and Judgment Fund—a fund designed to "indemnify the innocent victims of financially irresponsible owners and operators of motor vehicles." *Allied, supra,* 219 Md. at 612, 150 A.2d at 424.

In determining the validity of the fund, the Court addressed the power and authority of the State to create such a fund and its authority to require private entities to finance it. In upholding the State's authority to create the fund and impose assessments on insurers, the Court stated:

> We think insurers have no sound ground on which to challenge the right of the State to levy the small percentage of the Maryland premiums they are required to pay annually to the fund. It is clearly established that the State may raise funds by taxation to expend for general welfare, and it is for the Legislature and not the taxpayers or the courts to choose the methods and subjects of taxation. It is no proper objection to a scheme of taxation that the benefits paid and those to whom they are paid are unrelated to the persons taxed and the amount they pay, or that those who have to pay may not have contributed to the conditions requiring the tax and may not be benefitted by the expenditure of the tax money.

*Allied, supra,* 219 Md. at 616, 150 A.2d at 427.

The Court concluded that the assessments and other obligations imposed under the Unsatisfied Claim and Judgment Fund were justified as an exercise of the State's

taxing power and the State's police power. *Allied, supra,* 219 Md. at 623, 150 A.2d at 431. The Court reasoned that

> [a]utomobile liability insurers make their profits because motorists use the roads and need protection both from paying claims and from not being able to collect if they are injured or damaged. It is reasonably conceivable, therefore, that insurers should be a group to pay taxes to be used to give protection to those who use the roads— those who are their paying customers.

*Allied, supra,* 219 Md. at 623–24, 150 A.2d at 431.

Appellant asserts, correctly, that the Court in *Allied* did not say such assessments are "taxes," but merely held them to be constitutionally valid under the State's taxing power. Appellant relies upon *State Insurance v. Nationwide,* 241 Md. 108, 215 A.2d 749 (1966), in which the Court held that the Unsatisfied Claim and Judgment Fund assessment constituted an "obligation" which statutorily justified a credit on an insurer's retaliatory tax return. The Court did not decide whether such payments are taxes, but said:

> For the purposes of this opinion, we shall assume, without deciding, that the payments did not come within the purview of "taxes, fees, fines, penalties, licenses [or] deposit requirements." (In *Allied Amer. Mut. Fire Ins. Co. v. Comm'r,* 219 Md. 607, [150 A.2d 421], we referred to such payments as a "tax," but we were discussing the constitutionality of the assessments on insurance companies for the support of the Fund and not the specific nature of such payments in the context of the statute. Although not excluding the possibility that the payments may properly be classified as "taxes," we find it unnecessary to base our conclusion herein on such a classification.)

*State Insurance, supra,* 241 Md. at 112, 215 A.2d at 752 (bracketed material in original).

At the same time, the Court did not say that the assessments are *not* taxes, and, in fact, concluded that the UCJ assessments are similar to taxes.

The exactions imposed by Section 151 are, we think, similar in character to both "taxes" and "licenses," specific items named in the statute preceding "or other obligations." Their payment is a prerequisite to the continuance of a foreign corporation's doing business in this state, and, at least to that extent, are in the nature of license fees.... *And license fees are, in reality, taxes.* *State Insurance, supra,* 241 Md. at 116–17, 215 A.2d at 754 (citations omitted) (emphasis added).

We conclude that SIF and UEF assessments imposed by Article 101, §§ 66 and 91 constitute "fees or taxes" within the meaning of Article 48A, § 515, and appellee is exempt from payment of those assessments.

■ Appellant next asserts that § 515 is in conflict with the stated legislative purpose that PCIGC is to provide payment of "covered claims" made against insolvent insurers. It posits that the SIF and UEF assessments are a part of the "covered claims." The principal rationale for this position seems to be that the Legislature has left unresolved the question of who is responsible for payment of the assessments if PCIGC is not.

"Covered claims" is defined in Maryland Code (1957, 1986 Repl. Vol., 1987 Supp.), Art. 48A, § 505.[4] The assessments

---

4.   § 505(c)(1) *"Covered claims"* means obligations, including unearned premiums, of an insolvent insurer which:
    (i) 1.   Arise out of the insurance policy contracts of the insolvent insurer issued to residents of this State or which are payable to residents of this State on behalf of insureds of the insolvent insurer; or
    2.   Arise out of surety bonds issued by the insolvent insurer for the protection of third parties, who are residents of this State;
    (ii) Were unpaid by the insolvent insurer;
    (iii) Are presented as a claim to the receiver in this State or the Corporation on or before the last date fixed for the filing of claims in the domiciliary delinquency proceedings;
    (iv) 1.   Except for surety bond claims, were incurred or existed prior to, on, or within 30 days after the determination of insolvency; or
    2.   For surety bond claims arising under surety bonds issued by a domestic insurer were incurred or existed prior to, on, or within 18

to the Subsequent Injury Fund and the Uninsured Employers' Fund are *"in addition to any payment of compensation to employees."* Maryland Code (1957, 1985 Repl. Vol., 1987 Supp.), Art. 101, § 66(2)(b) and § 91(d)(3) (emphasis added). They are not obligations arising out of the contract with the insurer. They are obligations assessed by the Legislature as a condition of doing business in this State. Moreover, § 11 of Article 48A provides:

> Provisions of this article relative to a particular kind of insurance or a particular type of insurer or to a particular matter shall prevail over provisions relating to insurance in general or insurers in general or to such matter in general.

Any conflicts which may exist between the Worker's Compensation Law and the Insurance Code must be resolved in favor of the Insurance Code. Although such assessments may be part of the "benefits" furnished by an employer, *Subsequent Inj. Fund v. S.R.C.*, 35 Md.App. 353, 370 A.2d 597 (1977), we hold they are not a part of the "covered claims" as defined in the Insurance Code.

As to who shall pay such assessments if the PCIGC does not, that issue was not raised before the trial court and we do not address it. Rule 1085. We think the resolution of that question is properly left to the General Assembly.

JUDGMENT AFFIRMED; APPELLANT TO PAY COSTS.

---

months after the determination of insolvency, whether or not the surety bonds are issued for no stated period or for a stated period; and

(v) Arise out of policy contracts or surety bonds of the insolvent insurer issued for the kinds of insurance to which this subtitle applies.

(2) *"Covered claim"* does not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise. No insurer shall assert a claim of subrogation against an insured of an insolvent insurance company but may assert any claim it may have against the receiver of the insolvent insurance company.