570 A.2d 323

## WORKMEN'S COMPENSATION COMMISSION

### v.

## PROPERTY & CASUALTY INSURANCE GUARANTY CORPORATION.

No. 31, Sept. Term, 1988.

Court of Appeals of Maryland.

March 1, 1990.

**2**

Julia M. Freit, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for petitioner.

Albert J. Mezzanotte, Jr. (J. Norris Byrnes, Philip B. Barnes, Whiteford, Taylor & Preston, all on brief), Towson, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL *, JJ.

ELDRIDGE, Judge.

The issue in this case is whether assessments, which are levied against employers or their insurers for the purpose of funding the Subsequent Injury Fund (SIF) and the Uninsured Employers' Fund (UEF), are "taxes" or "fees" within the meaning of Maryland Code (1957, 1986 Repl.Vol.), Art. 48A, § 515.

### I.

The SIF was created to insure that an employer, who has hired a handicapped worker, will be subject to worker's compensation liability only for the effects of an injury which the worker suffers while in the employer's service, and not for the combined effects of the previous handicap and the subsequent injury. The legislative policy of limiting the employer's worker's compensation liability to that payable for the subsequent injury was designed to encourage the hiring of handicapped persons. *See generally* Code (1957, 1985 Repl.Vol., 1989 Cum.Supp.), Art. 101, § 66; *McKenzie v. C. C. Kottcamp & Sons,* 311 Md. 54, 57, 532

---

* BLACKWELL, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

A.2d 703 (1987); *Subsequent Injury Fund v. Kraus*, 301 Md. 111, 117, 482 A.2d 468 (1984); *Anchor Motor v. Sub. Injury Fund*, 278 Md. 320, 324–325, 363 A.2d 505 (1976); *Subsequent Injury Fund v. Thomas*, 275 Md. 628, 633–634, 342 A.2d 671 (1975). In order to raise monies for the SIF, the Workmen's Compensation Commission assesses 6½% of all awards rendered against an employer, or the employer's insurance carrier, for permanent disability or death, and of all settlements approved by the Commission. Art. 101, § 66(2)(a).[1]

The UEF was created in 1967 to provide for the payment of workers' compensation awards against uninsured employers. Ch. 152 of the Acts of 1967, codified as Art. 101, §§ 90–102. The UEF is funded by, *inter alia*, a 1% assessment upon all awards rendered against an employer, or the employer's insurance carrier, for permanent disability or death, and upon all settlement agreements approved by the Commission. Art. 101, § 91(d)(3).[2]

The assessments to fund the SIF and UEF are paid in addition to any payment of compensation to employees or

---

1. Art. 101, § 66(2)(a) provides as follows:

   "(2) *Payments by employer, insurance carrier or State Accident Fund; fund created; management.*—(a) The Workmen's Compensation Commission shall assess a percentage amount, to be made payable to the Subsequent Injury Fund, on all awards rendered against an employer, or, if insured, the employer's insurance carrier or the State Accident Fund, for permanent disability and death, including awards for disfigurement and mutilation and also on all amounts payable by an employer or his insurance carrier or State Accident Fund pursuant to settlement agreements approved by the Commission as follows:

   (i) 5 percent as to awards and settlement agreements approved on and after June 1, 1963 and prior to July 1, 1987; and

   (ii) 6½ percent as to all awards and settlement agreements approved on and after July 1, 1987."

2. Art. 101, § 91(d)(3)(i) states:

   "(3)(i) An employer, or, if insured, the employer's insurance carrier or the State Accident Fund, as the case may be, shall pay to the Uninsured Employers' Fund an amount equal to 1 percent of all awards rendered against the employer for permanent disability or death, including awards for disfigurement or mutilation, and 1 percent of all amounts payable by the employer (or his insurance carrier or the State Accident Fund) pursuant to settlement agreements approved by the Commission."

their dependents. Art. 101, §§ 66(2)(c), 91(d)(3)(iii). All funds received by the SIF and the UEF are held, managed and disbursed by the State Treasurer. Art. 101, §§ 66(2)(d), 92.

The Property and Casualty Insurance Guaranty Corporation (PCIGC) was created by the General Assembly as a non-profit corporation intended "to provide a mechanism for the prompt payment of covered claims under certain insurance policies and to avoid financial loss to residents of Maryland who are claimants or policyholders of an insurer, including surety, which has become insolvent...." Code (1957, 1986 Repl.Vol.), Art. 48A, § 504.[3] PCIGC is funded by member insurers who are required to "be and remain members of the Corporation as a condition of their authority to transact insurance in this State." Art. 48A, § 506(b). PCIGC is obligated to pay, *inter alia*, the "full amount of any covered claim arising out of a workmen's compensation policy." Art. 48A, § 508(a)(1)(i). PCIGC is exempt, however, "from payment of all fees and all taxes levied by this State ... except taxes levied on real or personal property." Art. 48A, § 515.

After repeated attempts by the Workmen's Compensation Commission to collect from PCIGC for SIF and UEF assessments on awards PCIGC had paid to injured workers, PCIGC filed a complaint in the Circuit Court for Baltimore County for declaratory relief. PCIGC contended that the assessments for the SIF and UEF are taxes or fees and that, therefore, it is exempt from paying the assessments pursuant to Art. 48A, § 515. The Commission took the position that the SIF and UEF assessments are not taxes but are part of the "covered claims" which PCIGC is obligated to pay pursuant to Art. 48A, § 508.

---

**3.** "PCIGC's statutory existence is traceable to Ch. 703 of the Acts of 1971, which created its precursor, then known as the Maryland Insurance Guaranty Association (MIGA), a nonprofit, unincorporated legal entity created to aid claimants and policyholders of insolvent insurance companies. *See A.S. Abell Pub. Co. v. Mezzanote,* 297 Md. 26, 464 A.2d 1068 (1983)." *Insurance Com'r v. Prop. & Cas. Corp.,* 313 Md. 518, 522 n. 2, 546 A.2d 458, 460 n. 2 (1988).

The circuit court (Jacobson, J.) rendered a declaratory judgment holding that the assessments are taxes or fees within the meaning of Art. 48A, § 515, and that PCIGC is, consequently, exempt from paying the assessments. The Court of Special Appeals affirmed, *Workmen's Comp. Comm'n v. Property Ins.*, 74 Md.App. 99, 536 A.2d 714 (1988). Thereafter we granted the Commission's petition for a writ of certiorari to decide this important issue of statutory construction.

## II.

■ This Court long ago defined the statutory term "taxes" to mean "burdens, charges or impositions, put or set upon persons or property for public uses...." *Mayor and City Council of Baltimore v. Greenmount Cemetery*, 7 Md. 517, 535 (1855). Later this Court defined "tax" as "a charge imposed upon the taxpayer as an act of sovereignty, without his consent, and for the public use...." *Baltimore v. Fine*, 148 Md. 324, 328, 129 A. 356, 358 (1925), citing *Bonaparte v. State*, 63 Md. 465, 470–471 (1885). *See also, e.g., Comptroller v. Russell*, 284 Md. 174, 178, 395 A.2d 488 (1978) (quoting with approval the definition of a "tax" set forth in the *Greenmount Cemetery* case).

■ Moreover, the Legislature's use of the word "assessment" in no way indicates that a governmental charge imposed for a public purpose is not a "tax." As Chief Judge Le Grand observed for the Court in the *Greenmount Cemetery* case, *supra*, 7 Md. at 535:

"The distinction, if any, between a *tax* and an *assessment* is not very palpable. The meaning of the words is the same in our laws. When a man is assessed to pay a certain sum, it is equivalent to, and nothing more than, the imposition of a tax on him to that amount. This is the popular understanding of the signification of the terms, as well as that of philologists. Thus, *Webster:* Tax—'a rate or sum of money *assessed* on the person or property of a citizen by government for the use of the nation or State.' So, also, '*an assessment* is a valuation made by

authorized persons, according to their discretion, as opposed to a sum certain or determined by law. *It may be a direct charge of the tax to be paid.'* In principle, we are unable to discover any difference between the meaning of the words . . . ."

Under the above definition, the assessments to fund the SIF and UEF are "taxes." They are involuntary charges imposed by the State upon insurers and employers. They are intended to raise revenue for public purposes. As previously discussed, the purpose of the SIF is to limit an employer's compensation liability to that payable for the subsequent injury occurring while in the employer's service, thereby encouraging the hiring of handicapped persons. The SIF helps to insure job availability for the handicapped, full compensation for injuries received on the job, and a fair apportionment of liability to the employer. The primary objective of the UEF is to insure that injured employees receive the compensation to which they are entitled. The benefit of the general public is served by both of these funds because the burden of the circumstances they are intended to relieve would otherwise be shouldered in part by the general public. Accordingly, the assessment proceeds which fund the SIF and the UEF constitute government revenue raised by legally required payments to be expended for public purposes. As such, they are "taxes."

Moreover, the assessments to fund the SIF and UEF are similar to other assessments which have been viewed as taxes. In *Allied American Co. v. Comm'r*, 219 Md. 607, 616, 150 A.2d 421, 427 (1959), this Court held that assessments to the Unsatisfied Claim and Judgment Fund, which were virtually identical to the assessments in the case at bar, were an exercise of the State's taxing power. Later, in *State Insurance v. Nationwide*, 241 Md. 108, 116–117, 215 A.2d 749, 754 (1966), the Court held that assessments to the Unsatisfied Claim and Judgment Fund were in fact similar in character to both taxes and licenses for purposes of a credit on a retaliatory tax return.

Assessments and contributions to the SIF and UEF are like employer contributions to fund unemployment compensation, and this Court has specifically held the latter to be taxes. In *STD. Properties v. Emp. Security Bd.*, 201 Md. 1, 7, 92 A.2d 459, 462 (1952), the Court stated:

"The Unemployment Compensation Law, which imposes upon employers the obligation to pay a certain percentage of their pay rolls into the unemployment compensation fund, is an exercise of the taxing power of the State. The contribution demanded of the employer by this statute is an excise tax imposed by the Legislature...."

*See Compensation Board v. Albrecht*, 183 Md. 87, 89, 36 A.2d 666, 667 (1944) (the contribution "demanded from the employer is an excise tax imposed by the Legislature in the exercise of the police power of the State"). *See also, e.g., Carmichael v. Southern Coal & Coke Co.*, 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937); *State v. Thayer*, 118 N.H. 819, 822, 395 A.2d 500, 502 (1978).

The United States Court of Appeals for the First Circuit recognized that contributions to unemployment compensation are taxes, and the Court specifically likened them to workers' compensation assessments, which were held to be taxes as well. *In re Pan American Paper Mills, Inc.*, 618 F.2d 159, 162 (1st Cir.1980) (concludes that premiums to a governmental fund pursuant to the Puerto Rico Workmen's Accident Compensation Act should be treated as taxes because, like contributions made pursuant to a state unemployment compensation law, "they are pecuniary obligations imposed by the government for the purpose of defraying the expenses of an undertaking which it authorized"). *See State Industrial Accident Commission v. AEBI*, 177 Or. 361, 368, 162 P.2d 513, 516 (1945). *See also Territory of Alaska v. Alaska Juneau Gold Mining Co.*, 105 F.2d 841, 844 (9th Cir.1939); *Audubon Ins. Co. v. Bernard*, 434 So.2d 1072, 1075 (La.1983).

Turning specifically to the charges here involved, assessments to the SIF have been recognized as being "in the nature of a general tax assessed against members of a

certain group to cover expenses of administering a government program involving that group." *Cooper v. Wicomico County*, 284 Md. 576, 585, 398 A.2d 1237, 1242 (1979) (dissenting opinion).[4]

In addition, jurisdictions throughout the country have held that assessments like those involved in this case are in fact taxes. *American Alliance Insurance Co. v. State Bd. of Equalization*, 134 Cal.App.3d 601, 606, 184 Cal.Rptr. 674, 676, 30 A.L.R.4th 865 (1982) (tax on workers' compensation insurance carriers not special assessment but in the nature of a tax, and therefore may be used in computing retaliatory tax return); *Price v. All American Engineering Company*, 320 A.2d 336, 338 (Del.1974) (points out that insurance carriers and self-insured employers are taxed to support the Industrial Accident Board Second Injury and Contingency Fund); *Beth–Elkhorn Corporation v. John McDowell Ross*, 552 S.W.2d 656, 657 (Ky.1977) (refers to assessments for special claim fund as a tax); *Stottlemeyer v. General Motors Corp.*, 399 Mich. 605, 614, 250 N.W.2d 486, 490 (1977) (Silicosis and Dust Disease Fund is supported by a tax on employers); *Employer's Fire Ins. Co. v. Taxation Div. Director*, 5 N.J.Tax 326 (1983), *aff'd*, 6 N.J.Tax 613 (N.J.Super.1984) (assessments to Second Injury Fund may be taken into account in computing retaliatory tax liability); *State Industrial Accident Commission v. AEBI, supra*, 177 Or. 361, 162 P.2d 513 (contributions under the Workmen's Compensation Act are not deprived of their character as taxes); *Providence Wash. Ins. v. Comm. Dept. of Revenue*, 75 Pa.Commw. 463, 471, 463 A.2d 68, 72 (1983), *aff'd* 504 Pa. 506, 475 A.2d 741 (1984) (1½% of premiums, paid into special fund, count as tax on retaliatory tax return); *State ex rel. Christensen v. Nugget Coal*, 60 Wyo. 51, 62, 144 P.2d 944, 947 (1944) (employer's obligation for overdraft in State Industrial Accident Fund, because of

---

4. The nature of the assessments was not the issue of disagreement with the majority opinion.

payment awarded injured employee, is not a debt but is a tax).

## III.

The Commission's argument against treating the assessments as taxes within the meaning of Art. 48A, § 515 is a convoluted one based upon a strained interpretation of §§ 508(a) and 505(c) of Art. 48A.

First, the Commission begins with the premise, unsupported by any provision of the Code or by any decision of this Court, that the "SIF and UEF assessments are part of the overall workers' compensation required to be paid by an employer, or if insured, by the employer's insurer when an employee of the employer is permanently disabled or dies as a result of a job-related injury. . . . The assessments are part of the benefits provided by the employer" (Commission's brief, pp. 4–5).

Second, the Commission points to the definition of "covered claim" in the PCIGC subtitle of Art. 48A. That definition, in § 505(c), includes " 'obligations . . . of an insolvent insurer which: [a]rise out of the insurance policy contracts of the insolvent insurer issued to residents of this State . . . on behalf of insureds of the insolvent insurer.' " (Commission's brief, p. 8, quoting Art. 48A, § 505(c)). According to the Commission, because "payment of SIF and UEF assessments is part of the coverage afforded an employer when the insurer issues a policy for workers' compensation insurance," the "SIF and UEF assessments are part of the covered claims" within the meaning of Art. 48A, § 505(c). (Commission's brief, pp. 8–9).

Third, the Commission points to Art. 48A, § 508(a), which requires the PCIGC to pay "the covered claims" against the insolvent insurer. Because of its argument that the assessments are "covered claims" within the definition of § 505(c), the Commission concludes that § 508(a) requires the PCIGC to pay the assessments.

Fourth, the Commission contends that, because § 508(a) requires the PCIGC to pay the assessments, a construction of Art. 48A, § 515, which views the assessments as fees or taxes within the meaning of the exemption, would create a conflict between § 515 and § 508(a). This, in turn, would violate the principle of statutory construction that statutes should be construed " 'so as to harmonize with each other' " (Commission's brief, p. 9, quoting from *Baltimore Transit v. Mezzanotti*, 227 Md. 8, 19, 174 A.2d 768 (1961)). Thus, the Commission concludes that § 515 should be construed as not including the assessments as fees or taxes.

There are several flaws in the Commission's reasoning. Initially, the rule of statutory construction invoked by the Commission does not justify an unreasonable interpretation of one statute in order to create a conflict with a second statute, and then "harmonizing" the two enactments by ignoring the clear meaning of the second statute.

Moreover, the premise underlying the Commission's construction of Art. 48A, § 505(c), is erroneous. It is clear that the assessments are not part of the workers' compensation awards. Rather, the statutory provisions specifically distinguish the assessments from the awards. Art. 101, § 66(2)(c), states that the SIF assessments "shall be in addition to any payment of compensation to employees who are injured or sustain an occupational disease...." Art. 101, § 91(d)(3)(iii), similarly provides that the UEF assessments "shall be in addition to any payment of compensation to employees or to their dependents pursuant to the provisions of this article." The assessments are separate payments to the State, maintained by the State Treasurer. They are simply not part of the "overall workers' compensation," as asserted by the Commission.

Furthermore, the assessments do not "arise out of the insurance policy contracts of the insolvent insurer," and thus are not within the definition of a "covered claim" in Art. 48A, § 505(c). Instead, the assessments, like other taxes, are obligations arising wholly from statutes. As stated by Judge Pollitt for the Court of Special Appeals in

this case, the assessments "are not obligations arising out of the contract with the insurer. They are obligations assessed by the Legislature as a condition of doing business in this State." 74 Md.App. at 106, 536 A.2d at 717.

Consequently, the assessments are not "covered claims" for purposes of PCIGC's obligation under Art. 48A, § 508(a). There is simply no conflict between § 508(a) and § 515. The assessments are taxes, and plainly fall within the exemption in Art. 48A, § 515.

JUDGMENT AFFIRMED, WITH COSTS.